Maurine DeWolfe Brown v. Commissioner.
Maurine DeWolfe Brown v. Commissioner
Docket No. 35476.
United States Tax Court
1953 Tax Ct. Memo LEXIS 143; 12 T.C.M. (CCH) 948; T.C.M. (RIA) 53281; August 20, 1953
*143 1. Transaction whereby wife transferred her interest in property to her husband constituted a sale upon which gain or loss is recognized, rather than a mere division or partition of community property. 2. The sale was not a closed transaction until 1944 and the gain accrued in that year rather than in 1943 when the contract was signed. Lucas v. North Texas Lumber Co., 281 U.S. 11. George H. Chula, Esq., for the petitioner. Charles W. Nyquist, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in petitioner's income tax: Year
Amount
1944
$19,920.59
1945
562.13
Total
$20,482.72 The petitioner now concedes the correctness of the deficiency for 1945 and some of the adjustments made in the determination of her tax liability for 1944. The only issues presented for our consideration are (1) whether a certain "Property Settlement Agreement" made in December 1943 between petitioner and her husband resulted in a sale of petitioner's interest in property, and as such was a taxable event, or whether it was merely a division of the interests in property owned *144 by the marital community; and (2) if such agreement constituted a sale, was the gain realized thereon taxable in 1944 when the agreement was carried out? Findings of Fact A written stipulation of facts entered into by the parties is hereby adopted as part of our findings and is incorporated herein by reference. Also, facts stipulated during the course of the hearing, including a schedule of assets and liabilities of petitioner and her husband, are similarly incorporated herein by reference. The petitioner is an individual residing in Laguna Beach, California. She filed timely Federal individual income tax returns for the calendar years 1944 and 1945 with the collector of internal revenue for the sixth district of California. During the years 1943, 1944, and 1945, petitioner was on the accrual basis of accounting. In 1943 and for some years prior thereto, petitioner was the wife of Clarence R. Brown. On December 31, 1942, the petitioner and Clarence R. Brown executed a document entitled "Property Settlement Agreement" (hereinafter referred to as the "1942 agreement"). Their signatures on that agreement were acknowledged before a notary public. The 1942 agreement purported to *145 give each of the parties a separate interest in an undivided one-half of all real and personal property which had been owned previously by them as community property. It was also agreed that any deeds or conveyances necessary to accomplish that result would be executed by the parties. The 1942 agreement was entered into for the purpose of avoiding the effects of an anticipated change in the Federal tax laws. It was never recorded or placed on file in a public office. During 1943, the petitioner and her husband were experiencing some marital difficulties and decided to effect some sort of property settlement with the purpose of ending their co-ownership of the property. At that time their net assets had a book value of $162,187.06. The major asset which petitioner and her husband owned was an orange grove, together with improvements, tools, and machinery, referred to collectively as "the ranch". The nature of the ranch property was such that it was not feasible to make a physical division thereof in the contemplated property settlement. The ranch property was managed primarily by petitioner's husband, but petitioner assisted in the clerical and office work connected with the business. *146 Petitioner had not been receiving any of the profits from the operation of the ranch, although she had access to the bank deposits. The negotiations between petitioner and her husband were at arm's length, and, except for one occasion, she was in the position of a seller, endeavoring to dispose of her interest in the ranch to her husband. Various offers and counter-offers were made by both the petitioner and her husband. These ranged from an offer by petitioner's husband to purchase the petitioner's interest in the ranch for $75,000 to petitioner's offer to sell for $200,000. At one point in the negotiations, petitioner offered to purchase her husband's interest for $150,000. On December 14, 1943, the petitioner and her husband executed and acknowledged an agreement entitled "Property Settlement Agreement", and another document entitled "Supplemental Agreement." Both agreements were executed simultaneously, and, to the extent that there was any variance between them, it was the intention of the parties that the Supplemental Agreement was to prevail. The Property Settlement Agreement provided, in part, as follows: "SITUATION OF PARTIES "Said parties are now husband and wife, *147 and after the marriage of the parties hereto they adopted two minor children, still of tender age, both being girls. The parties hereto are agreed upon a mutual property settlement agreement, settling all of their property rights of every kind, nature and description, and all the property belonging to them, or either of them, in a complete and final settlement of every kind and nature whatsoever, and in the manner hereinafter recited: "WHEREFORE, said parties by reason of their mutual agreements hereinafter contained do hereby agree as follows, to-wit: "1. PROPERTY TO BE CONVEYED BY FIRST PARTY TO SECOND PARTY [1]
"First party [petitioner] hereby grants, assigns and sets over to second party [petitioner's husband] as his sole and separate property, the following: "a. All of that real property conveyed to the parties hereto by Marie Kersey et al., by deed recorded on February 26th, 1943, in Book 1179, page 416 of Official Records of Orange County, California, * * *. "b. All of that real property conveyed to the parties hereto by Marie Kersey et al., by deed recorded in Book 849, Page 390 of Official *148 Records of Orange County, California, * * *. "c. That certain real property situated at 1167 West Chestnut Street in the City of Santa Ana, State of California, * * *. "d. That certain meat cold storage box located on the home property of said parties. "e. All moneys or credits standing in the names of the parties hereto, or either of them. "f. All farming equipment, nursery stock, leasehold interests, accounts receivable, and all other property, both real, personal or mixed, not hereinafter specifically reserved to first party. "2. PROPERTY TO BE CONVEYED BY SECOND PARTY TO FIRST PARTY "Second party hereby grants, assigns and sets over to first party as her sole and separate property the following: "a. All of the real property conveyed by Willie Hale et ux. to the parties hereto by deed dated August 2nd, 1943, recorded August 18th, 1943, in Book 1208, page 139 of Official Records of Orange County, California, * * *. "b. Household furniture, and personal effects of fist party, situated in the home of the parties hereto. "c. The automobile now in possession of first party. * * *
"4. INCOME TAXES "Second party hereby agrees to pay all income taxes due and owing *149 by first party for the year 1943, excepting, however, such additional taxes as may be owing by first party by reason of the conveyance of any properties by first party to second party pursuant to the terms of this agreement. [2]
"5. EXECUTION OF PROMISSORY NOTE AND DEED OF TRUST. "Second party hereby agrees to execute a promissory note in the principal sum of $150,000.00, dated December 15th, 1943, bearing interest at the rate of 5% per annum, payable quarterly, and providing that second party shall pay first party not less than $25,000.00 thereon on or before June 1st, 1944, and further providing that second party may pay $5,000.00 or more on any interest paying date. Said promissory note shall be secured by a deed of trust covering the property set forth * * * [in paragraph 1], which deed of trust shall be of the standard form now used by the Orange County Title Company, and shall *150 contain a provision that in the event second party shall make a bona fide sale of any of the property covered by said deed of trust, first party will cause a partial reconveyance to issue, covering the property so sold upon receipt of 50% of the gross proceeds of such sale, said sum to be a credit on the promissory note for which said deed of trust is security. Said deed of trust further to provide that it is subordinate to any and all crop mortgages that may be made by second party, securing an aggregate of not more than $25,000.00. [3]
"9. COMPLETE SETTLEMENT "The execution of this agreement shall be and the same is intended to be a full, complete and final settlement of all the property rights of the parties hereto; and neither party hereto shall make nor attempt to make any other or further claim of any kind whatsoever upon the other, nor for any other or further property than the property received by the parties hereto respectively under the terms of this agreement. *151 "10 SEPARATE PROPERTY "The property received by the respective parties hereto shall be and remain forever the separate property of the party receiving same, and neither of the said parties will claim as against the other, nor against their respective heirs or legal representatives nor otherwise, the increase in value of the property conveyed to or belonging to the parties hereto respectively, nor make nor advance any claim hereafter that any portion of the property received by each of the parties hereto respectively is community property. * * *
"14. RELEASE AND SATISFACTION OF ALL CLAIMS ARISING OUT OF MARITAL RELATIONS "The property received by each of the parties hereto, respectively, and the agreement herein contained are received and made by each of the parties hereto in full of all claims and rights of every kind, nature and description, which either party hereto may have or claim to have against the other now or hereafter, and in full for all claims and rights which either party hereto would have upon the estate of the other, and is in lieu of all rights which the law would give the other as husband or wife, or as a surviving husband or wife; and the property so *152 received and so declared to be the property of the respective parties hereto shall forever remain the sole and separate property of such parties, each party having full power to sell, assign and deal with the same as though each of the parties was unmarried. "15. SIGNING OF FURTHER DOCUMENTS "Each party hereto further agrees to sign, acknowledge, execute and deliver to the other party, when so required, any and all documents or papers which may be necessary or convenient, or may be required by any purchaser to enable each of parties hereto to receive, sell or dispose of the property acquired by each party under the terms of this agreement, or of other property hereinbefore declared to be the property of said parties or either of them. * * *
"18. PROPERTY ACQUIRED IN THE FUTURE "PROPERTY OF THE PARTY ACQUIRING SAME "It is further agreed by and between the parties hereto that any and all property which may be acquired in the future by either of the parties hereto, or subsequent to the date of this agreement, shall be the sole and separate property of the party so acquiring the same and neither of the parties hereto will make any claim of any kind or character that said *153 property is or might be construed to be community property; and each of the parties hereto does hereby grant to the other all right, title and interest which he or she would or might acquire in the property so acquired by the other by reason of the marital relationship existing between the parties hereto." * * *
The agreement was signed late in the afternoon on December 14, 1943, and the next day the parties met in order to execute an escrow agreement. This latter agreement, with the Orange County Title Company, as escrow agent, restated in part the conveyance terms of the December 14, 1943 property settlement agreement and provided that petitioner would deliver to the escrow agent a deed from petitioner to her husband to be held in escrow until the husband performed his part of the property settlement agreement. The escrow agreement further provided that the parties were to execute the various deeds and bills of sale which were required by the property settlement agreement executed on the previous day. Both agreements of December 14, 1943, together with the foregoing escrow agreement, were parts of a single transaction. By a deed dated January 11, 1944, acknowledged January 17, 1944, and *154 recorded on February 10, 1944, petitioner conveyed to her husband the real property covered by the property settlement agreement of December 14, 1943. Petitioner's husband conveyed real property to petitioner, as provided in the property settlement agreement, by deed, dated January 11, 1944, acknowledged February 1, 1944, and recorded on February 18, 1944. Petitioner's husband executed a trust deed in the amount of $150,000, naming the petitioner as beneficiary, covering the real property conveyed to him by petitioner. This deed was dated January 1, 1944; acknowledged on February 1, 1944; and recorded on February 10, 1944. A bill of sale from petitioner to her husband and a bill of sale from petitioner's husband to petitioner, covering the personal property transferred pursuant to the property settlement agreement of December 14, 1943, were mailed to the respective transferees by the Orange County Title Company on February 26, 1944. On October 14, 1944, petitioner filed a complaint in an action for a divorce from Clarence R. Brown. In a verified complaint, she alleged that the parties had separated on or about May 1, 1944. An interlocutory judgment was entered October 28, 1944, and *155 a final decree of divorce was entered on October 29, 1945. Opinion RAUM, Judge: 1. The Commissioner determined that petitioner realized a capital gain in the amount of $78,556.47 taxable to the extent of 50 per cent "from the sale and/or exchange of capital assets" by reason of her transfer by deed to her then husband of certain property, pursuant to the Property Settlement Agreement, entered into December 14, 1943. The petitioner does not dispute the amount of gain determined, but she contests the Commissioner's position on the ground that the transfer, pursuant to the agreement, was merely a division of the respective interests of the parties in what, prior to the agreement, had been community property. As such, contends the petitioner, she realized no taxable gain whatever. We think that respondent must prevail on this issue. It is true that a mere partition of community property interests has been regarded as producing neither taxable gain nor loss. . On the other hand, it is equally true that interests in community property may be severed by a sale from one spouse to the other, and when such occurs the transaction is one in *156 which taxable gain or loss may be realized. See , affirmed, (C.A. 5): "Such property settlements are arm's length transactions, valid in all respects. They result in the transfer of property rights or interests for a consideration, and there is no sufficient reason to distinguish them from any other transactions fundamentally similar. If there were simply a division of the community estate, as petitioner contends, the property would have been equally divided, or at least an attempt would have been made in good faith to achieve an equal division. In that event, where, in exchange for a vested undivided one-half interest in the whole, each party receives a vested interest in the whole of one-half, obviously there would be no resulting taxable gain, and no change in the basis of any of the property by reason of the settlement. But where, as here, there results a virtual sale of one interest, whatever tax consequences flow from the amount of the consideration should be given proper effect." Somewhat the same thought was expressed in (C.A. 9.) And *157 whether or not there is a mere partition or a sale depends upon the facts of the particular situation. As was noted in : "* * * We are therefore unable to conclude that the transaction between petitioner and his then wife constituted a partition of their community property by order of the divorce court. To the contrary, it appears that the parties to the agreement chose to settle their property rights by bargain and sale rather than by partition or division." The facts of the present case bring it within the principle set forth in the Rouse and Johnson cases. We do not have here a division of community interests in the ranch. Indeed it does not appear that it was feasible to divide the ranch. The evidence suggests rather that the ranch property could be operated efficiently only as a unit, and the sole question as between husband and wife was as to which of them would get the ranch by purchasing the interest of the other and at what price. Nor was this a case in which the community property consisted of the ranch and a large amount of cash and in which it was agreed that the total property would be severed in such manner that the husband would *158 keep the ranch and the wife would keep the cash. Here, the cash that the wife would receive was not community property at all. It was merely the purchase price for her interest in the ranch. The transaction was basically a sale rather than a division or partition. Moreover, we have evidence that petitioner was aware that the entire assets of the community were not being equally divided and that the so-called property agreement of December 14, 1943, represented merely the best bargain that she could drive in the circumstances. We hold that there was a sale within the principle recognized in the Rouse and Johnson cases. In the circumstances it becomes unnecessary to consider the Commissioner's alternative contention that the community interests of the spouses had already been severed by the December 31, 1942 agreement and that the December 14, 1943 agreement must of necessity be merely a sale. Nor need we consider the further alternative contention of the Commissioner that petitioner has failed to establish that the property affected by the agreement was community property. For, regardless of the resolution of these alternative questions, our conclusion, that there was in fact a sale *159 by petitioner of her interest in the ranch to her husband, is dispositive of this issue. 2. The petitioner contends that if the Property Settlement Agreement dated December 14, 1943 was a sale, it was a closed transaction and the gain therefrom was realized in 1943, a year which is not before us. The respondent argues that the agreement was an executory contract and did not constitute a closed transaction until 1944. We agree with the respondent. Although the December 14, 1943 property settlement agreement was phrased in part in terms of a present conveyance we are satisfied, from an examination of that instrument as a whole, and of the other two contemporaneous instruments which were part of the same transaction, that it was merely a contract for conveyance to be made in the future. That agreement, the supplemental agreement, and the escrow agreement were all integral parts of the same transaction and were signed within a single twenty-four hour period; they must be considered together. Pursuant to these three agreements petitioner merely agreed to deliver her deed in escrow to await performance by the husband. In accordance with the supplemental agreement, the parties had substituted *160 1944 for 1943 as the effective date of the sale and there was no obligation upon the husband to do anything in relation to payment for the ranch prior to 1944. His note was dated January 1, 1944, and the deeds were actually delivered in 1944. Prior to 1944 the transaction was merely in an executory stage. The situation is comparable to that in , which makes it clear that even in the case of an accrual basis taxpayer, gain on the sale of property accrues, not at the time of execution of the contract of sale, but upon the seller's transfer of the property which ripens the purchaser's obligation to pay therefor. The decisions relied upon by petitioner, such as (C.A. 2), involved situations where the agreements were at least partly executed and were not executory as was the one before us. There is no basis here for creating an exception to the well established rule reflected in Lucas v. North Texas Lumber Co. Decision will be entered for the respondent. Footnotes
1. The property conveyed under this clause includes the ranch property.↩
2. By the terms of the supplemental agreement this clause was to be construed as referring to all taxes which were due and owing at the time of the agreement and which might be owing in the future by reason of operations of the first party in the year 1943 prior to the date of the agreement.↩
3. The supplemental agreement provided that the note be dated January 1, 1944, and that the husband was to pay interest on the note monthly, beginning February 1, 1944, until the $25,000 payment was completed.↩