VERN G. CONNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ELNORA CONNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Conner v. Commissioner
Docket Nos. 6883-73, 7741-73
United States Tax Court
T.C. Memo 1975-242; 1975 Tax Ct. Memo LEXIS 128; 34 T.C.M. (CCH) 1043; T.C.M. (RIA) 750242; July 22, 1975, Filed Robert D. Forrester and Harold C. Rector, for petitioner in docket No. 6883-73 Guy W. Johnson, for petitioner in docket No. 7741-73 H. Steven New, for respondent WILBUR
MEMORANDUM OPINION WILBUR, Judge: In these consolidated cases respondent determined deficiencies and additions to tax as follows: Addition to Tax Petitioner
Year
Deficiency
Under Sec. 6651(a) [1]
Vern G. Conner
1969
$22,441.95
$2,244.20
1970
3,580.49
895.12
Elnora Conner
1969
14,478.78
Due to concessions by the parties the sole issue remaining for decision is whether the division of property pursuant to a property settlement agreement was an equal partition of community *129 property or a sale by petitioner Elnora Conner to petitioner Vern G. Conner of her interest in the community property. [2]
All of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated by reference. Petitioner Vern G. Conner (Vern) was a resident of Farnsworth, Texas at the time the petition herein was filed. Vern filed his individual income tax return for the taxable year 1969 with the internal revenue service center, Austin, Texas on October 4, 1970. Vern filed his individual income tax return for the taxable year 1970 with the internal revenue service, Pampa, Texas on September 28, 1971. Vern was granted an extension of time until August 15, 1970 within which to file his individual income tax return for the taxable year 1969 but was not granted an extension of time within which to file his return for the taxable year 1970. Petitioner *130 Elnora Conner (Elnora) was a resident of Houston, Texas at the time the petition herein was filed. Elnora filed her individual income tax return for the taxable year 1969 with the internal revenue service center, Austin, Texas on December 28, 1970. Elnora filed an amended individual income tax return for the taxable year 1969 with the internal revenue service, Pampa, Texas on October 5, 1971. Vern and Elnora were legally married in Texas in March 1954. They continued to reside in Texas as husband and wife until July 14, 1969 at which time the marriage was dissolved by a decree of divorce entered and filed in the 84th Judicial District Court within and for Ochiltree County, Texas. Subsequent to the filing of the petition for divorce, petitioners executed an agreement under which Vern agreed to pay Elnora $6,500 and to pay $6,958.62 to the seller for an automobile which was in Elnora's possession. Both the automobile and $5,500 of the $6,500 payment were to be charged against Elnora's community interest upon consummation of the divorce. In consideration of the $6,500 payment Elnora waived her claim to alimony pendentelite. This agreement was not incorporated in the divorce *131 decree. The community property consisted of the following: Real Estate
House and lot in Farnsworth, Texas
$ 5,000
House and lot in Amarillo, Texas
15,000
$20,000
Personal Property
Household furniture
$ 1,000.00
Partnership investments
40,410.17
Feedlot cattle
162,062.84
Ranch cattle
77,681.41
Horses
200.00
Autos and trucks
6,100.00
Stocks and bonds
5,275.00
Savings account
471.89
Cash in bank
8,869.06
Accounts receivable
1,843.29
Farm equipment and supplies
9,430.00
Grain and feed inventory
35,714.40
Note from Leon Wisely
30,000.00
$379,058.06
Total Assets
399,058.06
Liabilities
Notes payable - Federal Land Bank
77,130.73
Southern States Loan Co.
(Amarillo lot)
5,000.00
Bank of Southwest
6,000.00
Canadian Prod'n Associates
198,282.73
Partnership Liabilities
27,960.60
1968 income taxes payable
6,424.42
Accounts payable
7,337.45
Total Liabilities
$328,135.93
The property settlement agreement provided that Elnora would retain as her separate property the Amarillo lot subject to a mortgage of $5,000, furnishings valued at $1,000, and personal items and her clothing. In addition, Vern paid Elnora $5,000 *132 and agreed to pay her $35,000 plus interest. The money was "cash consideration in payment for all of the personal property * * * in the possession of Vern G. Conner * * *." Vern received the remainder of the community property and assumed all the community debts except the mortgage on the residence which Elnora agreed to assume. The divorce decree stated that the property settlement was equitable and fair to all the parties. Although an inventory of property was filed by Vern prior to the divorce decree, no valuation was included. On September 10, 1969 Vern filed an inventory and appraisement of the assets and liabilities of the community. The parties have accepted these values for purposes of this case. Subsequent to the divorce decree Elnora was awarded an additur of $4,794.60. The additur was a reimbursement for amounts expended by Elnora in improving the separate property of Vern. If we determine that the division was a sale, the respondent has conceded for purposes of docket No. 7741-73, that the sales price of the assets was $156,439.07. Respondent has taken inconsistent positions in the notices of deficiency issued to the petitioners. In the notice issued to Vern Conner *133 respondent determined that the division of community property was an equal division and, therefore, a nontaxable event. Consequently, respondent disallowed an amount claimed by Vern as a cost of cattle purchased from Elnora. In the notice issued to Elnora respondent determined that a sale occurred in which Elnora realized taxable income. The sole issue is whether the division of the community property was an equal division or a sale or exchange. If the division is characterized as an equal one, there are no immediate tax consequences for either party arising from the division. If, however, the division is characterized as a sale or exchange, one spouse will realize gain and the other must adjust his basis in the assets purchased. The parties recognize that under Texas law, each spouse owns a vested, undivided one-half interest in the community assets. Hopkins v. Bacon,282 U.S. 122 (1930). In the event of divorce each spouse is entitled to one-half of each asset comprising the community estate. Since it would be impracticable to distribute one-half of each asset to each spouse, the community property may be divided in kind with each spouse receiving assets *134 of approximately equal total value or the community property may be liquidated and the proceeds distributed equally. Each spouse thus receives property equal to his one-half interest in the community. Since each spouse receives only what is already his, such an equal division of the community property is not a taxable event. Frances R. Walz,Administratrix,32 B.T.A. 718 (1935). If, on the other hand, one spouse receives assets substantially in excess of his share of the community assets, paying for the excess with resources from his separate property, the division is more accurately characterized as a sale. The spouse retaining the bulk of the assets is deemed to have purchased the other spouse's community interest. The spouse who receives less than his share of the community assets realizes gain to the extent that the value of the money and property he receives exceeds his basis in the property transferred. Johnson v. United States,135 F.2d 125 (9th Cir., 1943); C. C. Rouse,6 T.C. 908 (1946), aff'd, 159 F.2d 706 (5th Cir., 1947); Jessie Lee Edwards,22 T.C. 65 (1954). All the facts and *135 circumstances must be considered in determining whether a sale occurred. A slight inequity in the division does not mandate a characterization of the transaction as a sale. Thus, a good faith attempt to divide the property with each spouse receiving property approximately equal in total value will be a nontaxable division despite the slight differences in value. The division in this case was clearly a sale. The distribution was not a partition of each asset nor was it a division in kind with each spouse receiving assets of approximately equal value. In fact, since the majority of the community assets were utilized in the farm operations, an equal division would have required a liquidation of the assets and a subsequent division of the proceeds. Rather than liquidate the assets, Vern purchased Elnora's one-half interest in the community assets. Vern retained most of the community assets and assumed most of the community liabilities. Elnora, on the other hand, received only a house, furnishings and personal items from the community assets. As additional consideration, she received a cash payment of $5,000 [2] and Vern's promise to pay her an additional $35,000. Since the community *136 had insufficient cash to pay Elnora, she received Vern's separate property. The fact that Elnora received noncommunity assets and Vern received the bulk of the community assets mandates the conclusion that there was no equal division of the community assets but rather a sale of Elnora's interest in the community property. *137 The entire transaction was structured as a sale rather than an equal division of property between co-owners. Our conclusion is not altered by language in the divorce decree which recites that the agreement divided the property in a manner which was equitable and fair to all the parties. Although the language in an agreement is probative, it is not determinative particularly where, as here, the agreement is also framed in terms of a purchase and sale. The evidence does not indicate what portion of the purchase price the parties intended to be allocated to the assets exchanged, or indeed that the purchase price was negotiated by examining each category of assets individually rather than on an overall basis. In view of this, it would appear fair to allocate the purchase price to the assets exchanged in proportion to the relative value of the assets as stipulated to by the parties. The Commissioner has conceded that for purposes of Elnora's case the sales price was $156,439.07 (as determined in the deficiency notice), but the allocation of the purchase price between the assets sold is in error. In Vern's case, the deficiency notice does not disclose the basis of any allocation that *138 may have been made. Since an allocation will be required in both cases, Decisions will be entered under Rule 155
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.↩
2. Although Vern Conner in his petition alleged that his failure to file a timely return was due to reasonable cause, the record contains no evidence to support that allegation. Consequently, petitioner has failed to carry the burden of proof on that issue. Rule 142, Tax Court Rules of Practice.↩
2. Although Elnora received a $6,500 cash payment pursuant to an agreement executed prior to the property settlement agreement, the earlier agreement expressly provided that the payment was made in consideration of her waiver of alimony pendentelite. Despite the fact that the earlier agreement stated that $5,500 of the payment was to be charged against Elnora's community interest, neither the property settlement nor the divorce decree incorporates or refers to the earlier agreement. Furthermore, the record contains no evidence which might indicate that the parties took into account the $5,500 payment during the property settlement negotiations. Consequently, we do not consider any part of the $6,500 payment as an amount received in exchange for Elnora's interest in the community assets. Thus, the entire $6,500 payment must be characterized as alimony pendentelite.
The earlier agreement also required Vern to pay for a car which was in Elnora's possession and which she retained. This amount was also to be charged against Elnora's interest but was not in consideration for her waiver of alimony pendentelite. We believe that the amount Vern paid for the car must be considered as part of the purchase price of Elnora's community interest. Elnora also received a cash payment of $4,974.60 subsequent to the property settlement agreement. The additur was reimbursement for community expenditures made in repairing Vern's separate property. Consequently, it is not part of the purchase price of the assets.↩