JEAN C. CARRIERES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4831-72.    Filed August 27, 1975.

*James G. Leathers, Jr.,* for the petitioner.
*Leo A. McLaughlin* and *William E. Saul,* for the respondent.

HALL, *Judge:* Respondent determined a deficiency in petitioner's 1968 income tax of $26,921.29.

---

[14] See also *Brandon Barringer, supra.*

The sole issue remaining is how much gain, if any, did petitioner recognize in 1968 as a result of transferring her community property interest in 4,615 shares of stock to her former husband pursuant to a divorce decree.

## FINDINGS OF FACT

Most of the facts have been stipulated and are found accordingly.

Petitioner maintained her residence at Moraga, Calif., when she filed her petition. Petitioner filed her 1968 income tax return with the District Director in San Francisco, Calif.

On December 5, 1966, petitioner's former husband, George E. Carrieres (George), filed a complaint against petitioner for divorce in the California Superior Court in Contra Costa County. On December 12, 1966, petitioner answered George's complaint and filed a cross-complaint for divorce. The matters were tried in November 1967, and on December 14, 1967, the Superior Court issued a Memorandum of Decision stating that each party was entitled to a divorce from the other on the grounds of extreme cruelty.

Petitioner and George were unable to agree on a division of the community property, and accordingly both parties submitted proposed findings of fact and conclusions of law to the Superior Court for decision. Petitioner requested that cash and some minor items of community property be divided between the parties, and the balance, including the home, certain rental real property, and stock of the family business, be held by petitioner and George as tenants in common.

George requested that he be awarded the stock in the family business, the rental property be held as tenants in common, the cash be divided equally, the petitioner be awarded the balance of the community property, and that he pay petitioner a sum certain in order to equalize the division of the community property. On April 22, 1968, after hearing oral argument, the Superior Court issued an oral decision in favor of George. On April 29, 1968, George submitted proposed Amended Findings of Fact and Conclusions of Law, which were adopted by the Superior Court, and on May 1, 1968, the Superior Court issued an Interlocutory Judgment and Decree of Divorce.

The Superior Court found the following properties to be the community property of the parties and to have the following values:

| Property | Value |
|---|---|
| 4,615 shares of Sono-Ceil Co. | $241,000.00 |
| 4th St. real property | 55,000.00 |
| Residence on Keith Dr. (gross $35,000 less $7,873.57 encumbrance) | 27,126.43 |
| Two unimproved lots at Tahoe (gross $25,000 less $1,772.46 encumbrance) [sic][1] | 23,727.54 |
| Cash | 30,358.17 |
| Furniture | 3,500.00 |
| Equitable life insurance policy | 3,116.00 |
| Massachusetts Mutual life insurance policy | 4,290.00 |
| Total | 388,118.14 |

[1] There has been an apparent typographical error made in the divorce decree in one or both of these numbers, but all parties herein have accepted the net value given. Accordingly, so do we.

The Superior Court divided the community property as follows:

| Property | Petitioner | George |
|---|---|---|
| Cash | $15,179.09 | $15,179.08 |
| 4th St. real property | 27,500.00 | 27,500.00 |
| 4,615 shares Sono-Ceil Co. | | 241,000.00 |
| Life insurance | 7,406.00 | |
| Household furniture | 3,500.00 | |
| Two unimproved lots | 23,727.54 | |
| Family residence | 27,126.43 | |
| Total | 104,439.06 | 283,679.08 |

The Superior Court issued the following order to equalize the division of the community property:

As a further division of community property, plaintiff shall pay to defendant the sum of $89,620.01 in twelve (12) annual installments as nearly equal as possible in order to equalize the division of the community property of the parties after the foregoing distributions of property, defendant having received specific assets having a value of $61,759.97, and being entitled to $151,379.98, said sum being one-half of the total value of the assets hereinabove mentioned, other than property equally divided or sold or retained in joint ownership, of $302,759.97. Said payments shall bear interest at the rate of four per cent (4%) per annum from April 1, 1968. The said amount due shall be represented by a promissory note in the form set forth in Exhibit "A" to the Amended Findings of Fact and Conclusions of Law filed herein. Plaintiff shall prepare and execute

a Pledge Agreement pledging the stock of The Sono-Ceil Co. to secure said payments, which said Pledge Agreement shall be in the form set forth in Exhibit "B" to the Amended Findings of Fact and Conclusions of Law filed herein.

Before the parties had complied with the judgment and decree of May 1, 1968, petitioner on May 10, 1968, filed with the Superior Court a Notice of Motion for New Trial and to Modify and Vacate Decision, and a Memorandum of Points and Authorities in Support of Motion.

On May 22, 1968, a hearing was held before the Superior Court. On May 23, 1968, George's attorney wrote petitioner's attorney concerning the motion, stating that George would pay petitioner the $89,620.01 in a lump sum instead of making installment payments under the note. George's attorney advised the Superior Court of George's proposed modification of the divorce decree and requested the court to hold the motion under submission for 60 days and also advise George's attorney if the proposal were not satisfactory to the Superior Court. The court made no objection to the proposed modification, and it was apparently agreeable to petitioner, for she accepted the lump-sum payment and did not pursue her Motion for New Trial.

Although no documentation was ever executed by petitioner regarding the formal modification of the decree of divorce and a waiver of her right to appeal, on July 31, 1968, George paid petitioner the sum of $89,620.01 and on August 1, 1968, petitioner delivered her interest in the 4,615 shares of Sono-Ceil Co. stock to George.

George obtained the $89,620.01 paid petitioner from the following sources:

| Amount | Source |
|---|---|
| $65,000.00 | Loan from Sono-Ceil Co. |
| 13,111.66 | From George's community half of cash in bank accounts |
| 10,995.00 | George's bonus from Sono-Ceil Co. for its year ended June 30, 1968 (concededly George's separate property) |
| 513.35 | Interest and rents (concededly George's separate property) |
| 89,620.01 | |

On December 10, 1969, the Superior Court entered its Final Judgment of Divorce between petitioner and George.

OPINION

Petitioner first argues that the division of the community property was nontaxable in its entirety because it was a partition and not a transfer, and the parties intended to divide the community property and not to enter into a sale. Second, petitioner argues that if any part of the division of the community property is taxable, to the extent petitioner received community property (including community cash) for her interest in the stock of Sono-Ceil Co., it was a nontaxable disposition.

Respondent contends that petitioner must recognize the entire gain realized on the disposition of her interest in Sono-Ceil Co. stock.

When petitioner and George were granted a divorce in 1968, because they were unable to agree on a division of their community property, the Superior Court provided for the disposition of their property. Petitioner had wanted to retain her community interest in the family business, Sono-Ceil Co. George insisted that he be given a 100-percent interest in the business, and the Superior Court agreed. The business represented more than half the value of the entire community property of petitioner and George. George was therefore required to give petitioner his community one-half share of property valued at $61,759.97, such share being valued at $30,879.99, and also gave her an installment note for $89,620.01. These amounts were well in excess of the value of George's interest in the community property of the couple other than the Sono-Ceil Co. stock.

George thereafter, in settlement of a further dispute, paid off the $89,620.01 in a lump sum. In order to acquire the cash, he borrowed $65,000 from Sono-Ceil Co., used his community half of the cash on hand at the time of the divorce ($13,111.66), and used an additional $11,508.35 cash which both parties agree was George's separate property.

Usually, unless otherwise expressly provided in the Code, gain from the sale or exchange of property is recognized for tax purposes. Sec. 1002.[1] However, the judge-made, well-settled law concerning the division of community property upon a divorce makes exceptions to that general rule. In effect, a nonstatutory nonrecognition rule has been created.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue.

Where community property is divided so that each spouse holds as his separate property an undivided one-half interest in the whole of each asset, or an equal number of units of fungible assets (like cash) are set aside to each spouse, the conversion of the community property into separate property is nontaxable. See *Commissioner v. Mills*, 183 F. 2d 32 (9th Cir. 1950), affg. 12 T.C. 468 (1949). Moreover, where the whole of certain assets of the community (including cash) is set aside to one spouse and the whole of the other assets to the other spouse, but the aggregate value of assets set aside to each spouse equals one-half the value of the entire community property, the equal division of the community is considered a nontaxable partition of the property. *Frances R. Walz, Administratrix*, 32 B.T.A. 718 (1935); *Clifford H. Wren*, 24 T.C.M. 290 (1965); *Osceola Heard Davenport*, 12 T.C.M. 856 (1953); *Ann Y. Oliver*, 8 T.C.M. 403 (1949). In the case of such a nontaxable division, the basis of the property set aside to each spouse is its basis to the community prior to the division. *Clifford H. Wren, supra* at 294; *Ann Y. Oliver, supra* at 430.

Not all divisions of community property are nontaxable, however. Taxable divisions of community property take one of two forms. An unequal division, where one spouse receives property having an aggregate value equal to more than half the value of the entire community property, causes recognition of gain, if any, to the spouse transferring the larger portion. Cf. *Long v. Commissioner*, 173 F. 2d 471 (5th Cir. 1949), reversing and remanding a Memorandum Opinion of this Court, cert. denied 338 U.S. 818 (1949); *Rouse v. Commissioner*, 159 F. 2d 706 (5th Cir. 1947), affg. 6 T.C. 908 (1946); *Johnson v. United States*, 135 F. 2d 125 (9th Cir. 1943). Likewise, an allegedly "equal division" of the community where one spouse gives his note or separate property for all or substantially all of the other spouse's community property set aside to him is a recognizing transaction. *Jessie Lee Edwards*, 22 T.C. 65 (1954); *Vern G. Conner*, 34 T.C.M. 1043 (1975); *Royce L. Showalter*, 33 T.C.M. 192 (1974); *Maurine DeWolfe Brown*, 12 T.C.M. 948 (1953); but compare *Frances R. Walz, Administratrix, supra.* Where the whole of such a community asset is set aside to one spouse in such a taxable division, the transferor spouse is deemed to have sold or exchanged his community interest in the asset to the transferee spouse, and gain realized to such transferor equals one-half of any

excess over the community's basis of the fair market value of the asset at the time of transfer; the transferee spouse's basis in the asset after the transfer equals one-half the original community basis plus one-half the fair market value of the asset. See *Long v. Commissioner, supra; Rouse v. Commissioner, supra; Johnson v. Commissioner, supra;* sec. 1012.[2]

Here we have an assertedly equal division of the community, but to reach that division George gave petitioner cash which was his separate property. This was necessitated because George received well over half the value of the community assets, and could only make up the difference out of separate property. This represents, therefore, an intermediate situation—neither a purchase with separate funds of all or virtually all of the other spouse's community property, as in *Edwards,* nor an equal division of community property without equalization payments in separate property. We see no reason why the use of separate cash to purchase part of the community should preclude application of the nonrecognition principle to the extent of the value of the community property retained by the spouse. Otherwise there would be introduced a "cliff effect" under which the use of even $1 of separate property to remedy a disparity in the division of community property would render entirely inapplicable the protection of the nonstatutory nonrecognition principle, and would frustrate the beneficial policy underlying that principle. But on the other hand, the mere fact that some community property goes to each party should not blind us to the reality that a purchase and sale transaction, rather than a true "division," occurs to the extent that separate cash is used to redress an inequity in the division of the community. No statutory nonrecognition principle precludes recognition of gain on such a transaction, and the case law does not support petitioner's contention that it comes within the judge-made rule permitting nonrecognition on an equal division of community property. To the extent, therefore, that one party receives

---

[2] In *United States v. Davis,* 370 U.S. 65 (1962), the Supreme Court determined that under Delaware law the transfer of the husband's property to the wife in release of her inchoate marital rights upon dissolution of the marriage was a taxable event. The Court acknowledged that a mere division of community property between coowners was a different situation and merited a different tax treatment. 370 U.S. at 70-71. The Court also took note, without apparent disapproval, that the Internal Revenue Service considered the release of the wife's marital rights in exchange for her husband's property not to be a taxable event to the wife even though the property in the wife's hands took a basis equal to its fair market value at time of transfer.

separate cash or other separate property, rather than community assets, in exchange for portions of his community property, he has sold or exchanged such portions and gain, if any, must be recognized thereon.

This rule may in many cases raise questions of allocation. Where a spouse conveys his interest in both high-basis and low-basis community assets to his spouse for a consideration including both separate and community assets, should he be deemed to have "sold" the low-basis community assets and "divided" the high-basis community assets, or vice versa? We think that for purposes of recognition of gain, we should look first, as a general rule, to the expressed intent of the parties. We need here express no view as to an appropriate rule where such intent cannot be divined, nor as to what the result would be where recognition of loss rather than gain is involved.[3] Here, the record demonstrates that the asset intended to be "sold," i.e., delivered for separate property, was Sono-Ceil Co. stock. We hold, accordingly, that petitioner sold her community interest in the Sono-Ceil Co. stock set aside to George to the extent of the aggregate separate property she received from George, but not to the extent of the excess of the value of such interest over that of the separate property she received. To the extent she exchanged her community interest in Sono-Ceil Co. stock for George's community interest in other assets (including cash in community bank accounts), the division was tax-free. *Frances R. Walz, Administratrix, supra;* see *Osceola Heard Davenport, supra; Clifford H. Wren, supra; Ann Y. Oliver, supra.* To the extent she exchanged her community interest in Sono-Ceil Co. stock for George's separate property (other cash only), she sold her interest to George. *Jessie Lee Edwards, supra; Vern G. Conner, supra; Royce L. Showalter, supra; Maurine DeWolfe Brown, supra.*

It could be argued that the appropriate way to give effect to this principle would be to treat the gain realized on all of her community interest in the stock as being recognized up to the amount of separate property received in exchange therefor. However, we consider that it more reasonably reflects the intent of the rule providing nonrecognition of the community property for community property exchanged to limit the gain recognized to that proportion of the gain realized which the separate

---

[3] But see sec. 267.

property received in the exchange bears to the total property received.

Petitioner argued that she intended an equal, nontaxable division of the community property, that she did not want to relinquish her interest in the stock, and that she did so only by reason of court order. The fact that the transfer of the stock took place as a result of the court's decree, because the parties were unable to agree on the division of the property, has no bearing on whether it is a sale or exchange. The decree merely takes the place of the agreement the parties were unable to reach. *Pulliam v. Commissioner,* 329 F. 2d 97 (10th Cir. 1964), affg. 39 T.C. 883 (1963), cert. denied 379 U.S. 836 (1964).

Petitioner further argues that if the transaction is taxable at all, it is taxable only to the extent separate cash was exchanged for petitioner's community interest in the Sono-Ceil Co. stock. With this we agree. However, the parties cannot agree how much of the $89,620.01 cash in excess of $11,508.35, if any, was the separate property of George.

The first question to resolve is whether George's community interest in the family bank accounts was first distributed to him by court order as his separate property and then paid over, or whether it was a community asset distributed directly to petitioner by agreed amendment to the court order. We conclude that the Superior Court approved the parties' informal revision of the decree requiring George to give petitioner cash, by not advising George that the parties' proposed amendment in settlement of petitioner's motion was unsatisfactory to the court. Therefore petitioner directly received all the community cash in exchange for part of her community interest in the Sono-Ceil Co. stock, and to the extent of the total community cash, the exchange was nontaxable. See *Osceola Heard Davenport,* 12 T.C.M. 856 (1953).

Petitioner also argues that the $65,000 George borrowed from Sono-Ceil Co. is "in a nontechnical sense" community property. The loan was made from a corporation all of the stock of which was set aside to George as his separate property. In no manner, technical or nontechnical, could the proceeds of the loan George took from Sono-Ceil Co. be considered other than his separate property.

Hence, petitioner made a taxable exchange of her community interest in the Sono-Ceil Co. stock to the extent that she received

George's separate property cash therefor, namely $76,508.35. Therefore, of the $120,500 of assets she received for her interest in the stock, $76,508.35 represented a sale, and the remaining $43,991.65 of the proceeds a nontaxable exchange. Petitioner must recognize 63.5 percent of the gain realized on her interest in the stock ($76,508.35 as a percentage of $120,500).

*Decision will be entered under Rule 155.*