JOHN M. GAUGHAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; GLORIA J. GAUGHAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gaughan v. Commissioner
Docket Nos. 150-91, 259-91
United States Tax Court
T.C. Memo 1993-320; 1993 Tax Ct. Memo LEXIS 323; 66 T.C.M. (CCH) 168; July 20, 1993, Filed *323 Decision will be entered for petitioner in docket No. 150-91. Decision will be entered for respondent as to the deficiency and for petitioner as to the addition to tax under sec. 6661(a) in docket No. 259-91. For docket No. 150-91, petitioner: Norman Riedmueller. For docket No. 259-91, petitioner: Jay R. Houren. For respondent: Carol B. Reeve. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: By separate statutory notices of deficiency, respondent determined deficiencies in petitioners' Federal income tax and an addition to tax as follows: Petitioner John M. Gaughan, docket No. 150-91
Year
Deficiency
1984
$ 236,901
Petitioner Gloria J. Gaughan, docket No. 259-91
Addition to Tax Year
Deficiency
Sec. 6661 1983
$ 331,473
$ 82,868 When petitioners filed their petitions, petitioner John M. Gaughan was a resident of Houston, Texas, and petitioner Gloria J. Gaughan was a resident of Santa Fe, New Mexico. By order of the Court, these cases have been consolidated for trial, briefing, and opinion. Respondent has conceded that Mrs. Gaughan is not liable for the addition to tax under section 6661 [1] for substantial understatement *324 of her 1983 income tax liability. The issues for decision are (1) whether a certain corporate share transaction incident to petitioners' 1983 divorce was a taxable sale or a tax-free division of community property and (2) whether the 6-year limitation period of section 6501(e) applies to Mrs. Gaughan. For the reasons discussed below, we hold that the transaction was a taxable sale on which Mrs. Gaughan recognized gain to the extent her amount realized exceeded the adjusted basis of her community interest in the shares, and that Mr. Gaughan obtained an increased basis (equal to his purchase price) in the share interest he purchased from Mrs. Gaughan. Consequently, there is a deficiency in Mrs. Gaughan's Federal income tax for the taxable year 1983 as determined by respondent, and no deficiency in Mr. Gaughan's Federal income tax for the taxable year *325 1984. Because Mrs. Gaughan failed to report or disclose the transaction on her 1983 Federal income tax return, the 6-year period of limitations applies to her, and assessment and collection of the deficiency determined against her is not barred by the statute of limitations. FINDINGS OF FACT Most of the facts have been stipulated and are so found. When petitioners divorced on September 7, 1983, they were residents of Texas, a community property State. Except for clothing and jewelry, petitioners had no separate property. Incorporated in the divorce decree was a property settlement agreement executed by petitioners on the date of the divorce. Under the property settlement agreement, Mrs. Gaughan's community interest in 61,328 shares of stock in Telecommunication Specialists, Inc. (TSI), a closely held corporation 45.5 percent of whose outstanding stock was owned by petitioners, was set aside for Mr. Gaughan. In lieu of receiving her community interest in the TSI stock (30,664 shares), Mrs. Gaughan received $ 1.7 million in cash from Mr. Gaughan upon entry of the divorce decree. [2] He obtained the funds to make this payment by means of a $ 2 million loan from InterFirst Bank *326 of Houston, N.A. The loan was evidenced by a demand note, dated September 7, 1983, executed solely by Mr. Gaughan as maker, and Mrs. Gaughan's name does not appear anywhere on the note. The loan was secured by the 61,328 shares of TSI stock, Mrs. Gaughan's community interest in which she had transferred to Mr. Gaughan earlier that day. The allocation of community debts in the property settlement agreement does not specifically mention the $ 2 million loan and does not allocate any such liability to Mrs. Gaughan. However, Schedule C of the agreement provides that included among Mr. Gaughan's liabilities was: Any and all notes, liabilities, guarantees, contingent guarantees, contingent liabilities and/or indebtedness entered into or signed by * * * [Mr. Gaughan] without the joinder of * * * [Mrs. Gaughan].
*327 Mr. Gaughan instructed the bank to write a cashier's check payable to Mrs. Gaughan in the amount of $ 1.7 million "in connection with the settlement of the divorce proceedings". The bank turned the check over to Mr. Gaughan, who immediately hand-delivered it to his attorney to hold in accordance with escrow instructions. During the interval between execution of the loan documents and entry of the divorce decree, the cashier's check payable to Mrs. Gaughan was held in escrow by Mr. Gaughan's attorney and was not handed over to Mrs. Gaughan's attorney until the divorce decree had been entered. Mr. Gaughan retained the $ 300,000 balance of the loan proceeds. Respondent granted Mrs. Gaughan two extensions of time to file her 1983 Federal income tax return, and she timely filed the return on October 17, 1984. Mrs. Gaughan did not report on her 1983 return the $ 1.7 million she received from Mr. Gaughan for her community interest in the TSI stock or otherwise disclose the transaction to respondent. On September 19, 1984, Mr. Gaughan sold his entire interest in TSI for $ 13,392,000. [3] Mr. Gaughan timely filed his Federal income tax return for the taxable year 1984, pursuant to extension, *328 on August 5, 1985. On Schedule D of his return, Mr. Gaughan reported that his basis in the TSI stock included the $ 1.7 million he transferred to Mrs. Gaughan for her community interest in the stock and computed his long-term capital gain using such basis. Mr. Gaughan later filed an amended return for 1984 on Form 1040X on which he claimed an increased basis for his selling expenses. On October 5, *329 1990, respondent mailed Mrs. Gaughan a statutory notice of deficiency for the year 1983 determining that she received the $ 1.7 million in a taxable sale of her community interest in the TSI stock to Mr. Gaughan and allowing her a $ 3,000 basis in the stock. [4] Respondent thus determined that Mrs. Gaughan recognized $ 1,697,000 in long-term capital gain in 1983 and determined a $ 331,473 deficiency in her 1983 income tax and an addition to tax under section 6661 for substantial understatement of her income tax liability. On the same date, respondent mailed Mr. Gaughan a statutory notice of deficiency for 1984. This notice determined that Mr. Gaughan received the TSI shares in a tax-free division of community property, that his basis in the shares did not include the $ 1.7 million he paid Mrs. Gaughan, but that he was entitled to a $ 510,167 basis in the shares, which included his initial $ 3,000 basis plus his selling expenses as shown on his amended return. Accordingly, respondent determined a $ 236,901 deficiency in Mr. Gaughan's 1984 income tax. *330 Respondent has taken inconsistent positions with respect to the TSI stock transaction between petitioners and, in order to protect herself from being whipsawed, issued notices of deficiency to both Mr. and Mrs. Gaughan. Petitioners and respondent have so framed and argued the issues that a decision in favor of either petitioner will necessarily result in a decision against the other. Respondent, on brief, has favored Mrs. Gaughan's position, but has also made the alternative arguments to protect respondent's position if the Court should find in favor of Mr. Gaughan. OPINION Limitation Period Applicable to Mrs. Gaughan
A preliminary issue in this case is whether the 6-year statutory limitation period on assessment and collection applies to Mrs. Gaughan. Section 6501(e)(1) provides that if a taxpayer omits from gross income [5] an amount of gross income greater than 25 percent of the gross income reported on the return, the period of limitations on assessment and collection is 6 years rather than the 3 years provided in section 6501(a). *331 Respondent has the burden of proof on this issue. Wood v. Commissioner, 245 F.2d 888, 893-895 (5th Cir. 1957), affg. in part and revg. in part T.C. Memo. 1955-301; Bardwell v. Commissioner, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963). To carry this burden, respondent must prove (1) that an amount of gross income not reported on Mrs. Gaughan's 1983 Federal income tax return was properly includable in gross income, and (2) that such amount was in excess of 25 percent of the amount of gross income reported on the return. Estate of Whitlock v. Commissioner, 494 F.2d 1297 (10th Cir. 1974), affg. in part and revg. in part 59 T.C. 490 (1972); see Stafford v. Commissioner, T.C. Memo. 1992-637. In addition, section 6501(e)(1)(A)(ii) provides that an item is not considered omitted from gross income if the taxpayer adequately disclosed the amount on the return or on an attached statement. Mrs. Gaughan has the burden of proving that she made adequate disclosure. Whitesell v. Commissioner, 90 T.C. 702, 708 (1988); *332 University Country Club, Inc. v. Commissioner, 64 T.C. 460, 468 (1975). Whether the 6-year limitation period applies to Mrs. Gaughan depends on the outcome of the main issue: Was the TSI stock transaction a taxable sale of stock for cash between petitioners or was it a nontaxable approximately equal division of community property between divorcing spouses? Because we conclude that the transaction was a taxable sale, Mrs. Gaughan recognized $ 1,697,000 in long-term capital gain on the transaction. Inasmuch as this amount is in excess of 25 percent of the gross income shown on her 1983 Federal income tax return and was not disclosed thereon, the 6-year period of limitations applies to her. Mrs. Gaughan obtained two extensions of time to file and timely filed her 1983 Federal income tax return on October 17, 1984. Respondent mailed the notice of deficiency to Mrs. Gaughan on October 5, 1990. Therefore, the 6-year statutory limitation period on assessment and collection with respect to her taxable year 1983 had not expired when respondent mailed her the statutory notice of deficiency for 1983. Sec. 6503(a). Taxable Gain or Nontaxable Community *333 Property Division
Prior to enactment of section 1041, [6] *336 transfers of appreciated property between spouses or former spouses incident to divorce in exchange for a release of marital rights were taxable sales or exchanges that resulted in gain recognition to the transferor spouse. United States v. Davis, 370 U.S. 65 (1962). However, in community property States, where husband and wife are each deemed to own one-half of the community property, [7] divorcing spouses could make an approximately equal division of the community estate and treat the transaction as a nontaxable partition. Walz v. Commissioner, 32 B.T.A. 718 (1935); Wren v. Commissioner, T.C. Memo. 1965-52. The basis of the property set aside to each spouse was its basis to the community prior to the division. Siewert v. Commissioner, 72 T.C. 326, 332-333 (1979); Carrieres v. Commissioner, 64 T.C. 959, 964 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977); see United States v. Davis, supra at 69-71. *334 For an expression of respondent's views, which are not inconsistent with the foregoing, see Rev. Rul. 74-347, 1974-2 C.B. 26 (no gain or loss recognized on partition of joint property). However, in community property States, prior to enactment of section 1041, a substantially unequal division of community property or a transaction in which one spouse received the other spouse's separate property was considered a taxable sale or exchange on which gain was recognized. Carrieres v. Commissioner, supra; Edwards v. Commissioner, 22 T.C. 65 (1954); Rouse v. Commissioner, 6 T.C. 908 (1946), affd. 159 F.2d 706 (5th Cir. 1947). In such a case, the transferee spouse was considered to have purchased the other spouse's property and took a section 1012 cost basis in the property received. United States v. Davis, supra at 73; Siewert v. Commissioner, supra at 333; Carrieres v. Commissioner, supra at 964-965. In contrast, under *335 current law, as provided by section 1041, no gain or loss is recognized on the exchange of property between spouses or former spouses incident to divorce, even if one spouse receives only cash. Sec. 1041(a); Balding v. Commissioner, 98 T.C. 368 (1992). In a transaction covered by section 1041, the transferee spouse takes a carryover basis in the property. Sec. 1041(b). However, section 1041 does not apply to the case at hand because the 1983 transfer of property in question occurred before the statute's 1984 effective date. See supra note 6. The parties have stipulated that the TSI stock was community property. However, the parties do not agree that the $ 2 million Mr. Gaughan borrowed from InterFirst Bank of Houston, N.A., was community property. Mrs. Gaughan and respondent *337 argue that, under Texas law, it was community property because it was acquired during coverture. Mr. Gaughan argues that the proceeds of the $ 2 million loan were his separate property because he alone borrowed the funds on the date of the divorce and did not turn over the $ 1.7 million to his former wife until after the divorce decree had been entered. On this issue, we agree with Mr. Gaughan. Under Texas law, "property possessed by either spouse during or upon dissolution of the marriage is * * * [presumed to be] community property." Lindsey v. Lindsey, 564 S.W.2d 143, 146 (Tex. Civ. App. 1978); Horlock v. Horlock, 533 S.W.2d 52, 60 (Tex. Civ. App. 1975); Tex. Fam. Code Ann. sec. 5.02 (Vernon 1993). This presumption prevails where property is acquired on credit even if the community debt is subsequently paid with separate assets. Bradley v. Bradley, 540 S.W.2d 504, 512 (Tex. Civ. App. 1976). However, the presumption is rebutted if the lender expects to be repaid from the separate property of one spouse rather than from community property, even if community funds were actually used *338 to pay the debt. Ray v. United States, 385 F. Supp. 372, 377-378 (S.D. Tex. 1974), affd. 538 F.2d 1228 (5th Cir. 1976); Cockerham v. Cockerham, 527 S.W.2d 162, 171 (Tex. 1975). The following facts demonstrate that the bank expected to be repaid only by Mr. Gaughan from his separate property and that the $ 2 million in loan proceeds was Mr. Gaughan's separate property: (1) Mr. Gaughan solely arranged for the $ 2 million loan with Interfirst Bank of Houston; (2) Mrs. Gaughan's name does not appear on the note and she did not sign the note; (3) the allocation of community debts in the property settlement agreement does not specifically mention the $ 2 million loan and does not allocate any such liability to Mrs. Gaughan; (4) the note was executed the same day as and only hours before the divorce decree was entered; (5) Mr. Gaughan instructed the bank to write a cashier's check payable to Mrs. Gaughan in the amount of $ 1.7 million "in connection with the settlement of the divorce proceedings"; (6) the check was held in escrow by Mr. Gaughan's attorney; (7) Mrs. Gaughan did not receive the check *339 for $ 1.7 million until after the divorce decree was entered, and (8) the $ 2 million debt was secured by the 61,328 shares of TSI, all of which were owned by Mr. Gaughan as of the consummation of the divorce and the closing of the share transaction on September 7, 1983. It is clear that the bank expected to be repaid only by Mr. Gaughan and that Mrs. Gaughan had no rights in the $ 1.7 million until after the divorce decree was entered. In these circumstances, the obligation to repay the $ 2 million borrowed by Mr. Gaughan was his separate liability and not a community liability. [8] *340 Siewert v. Commissioner, supra at 335-336; Ray v. United States, supra; Cockerham v. Cockerham, supra.Mr. Gaughan therefore has rebutted the presumption that the $ 2 million he borrowed on September 7, 1983, was community property, and he has shown that it was his separate property. [9]
*341 Because Mrs. Gaughan received $ 1.7 million in separate property from Mr. Gaughan in exchange for her one-half interest in the TSI stock, which had a $ 3,000 basis in her hands, we hold that Mrs. Gaughan realized and recognized $ 1,697,000 of gain on the TSI stock transaction. Accordingly, Mr. Gaughan was entitled to an increased basis in the amount of $ 1.7 million under section 1012. We reached the same result in Siewert v. Commissioner, 72 T.C. 326 (1979), and Brown v. Commissioner, a Memorandum Opinion of this Court dated Aug. 20, 1953, and in other similar presection 1041 cases involving separations and divorces in community property States. Carrieres v. Commissioner, 64 T.C. 959 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977); Edwards v. Commissioner, 22 T.C. 65 (1954); Rouse v. Commissioner, 6 T.C. 908 (1946), affd. 159 F.2d 706 (5th Cir. 1947). The operative facts in Siewert v. Commissioner, supra, are similar to those in this case. In Siewert *342 , husband and wife, who were Texas residents, entered into a property settlement agreement in which they divided their community estate and provided for certain payments by the husband to the wife. As in the case before us, the agreement was contingent on obtaining a divorce, and the Texas divorce court approved the divorce on the same day the property settlement agreement was executed. Under the settlement agreement, the taxpayer husband received property with a net value in excess of $ 2 million, and his former wife received assets worth approximately $ 714,000. In addition, the wife received from her former husband (1) $ 100,000 in cash, which the taxpayer husband obtained from bank loans evidenced by two $ 50,000 notes executed on the date of the divorce, (2) the taxpayer husband's note in the amount of $ 100,000, and (3) the benefit of her husband's assumption of net community indebtedness in the amount of $ 159,598.98. As in the case at hand, one spouse (the wife) received a large amount of cash that was obtained from a bank loan by the other spouse (the husband) on the date of the divorce. In Siewert v. Commissioner, supra, we found that *343 the statutory presumption under Texas law, Tex. Fam. Code. Ann. sec. 5.02 (Vernon 1970), in favor of the loan proceeds being community property was rebutted because the bank did not expect that the debt would be repaid from community assets but from the husband's separate property; i.e., his post-divorce separate property. In Siewert v. Commissioner, supra at 335-336, we said: Here, however, the presumption is not applicable. The $ 100,000 was borrowed from the bank on petitioner husband's credit, not on the credit of the community. The notes to the bank were executed only hours before the divorce and were to be paid subsequent to the divorce. It is evident that the bank expected them to be paid by petitioner, not the community. In such circumstances, the $ 100,000 borrowed from the bank was not a community liability but was petitioner husband's separate liability. Ray v. United States, 385 F. Supp. 372, 377-378 and n.3 (S.D. Tex. 1974); Cockerham v. Cockerham, 527 S.W.2d 162, 171 (Tex. 1975); Elliott v. Elliott, 328 P.2d 291, 295 (Cal. App. 1958); *344 Kenney v. Kenney, 274 P.2d 951, 960 (Cal. App. 1954). Helen, [petitioner's wife,] thus did not receive this $ 100,000 from the community but received it as consideration from outside the community for her relinquishment of her interest in part of the community property.
A similar case in which we reached the same result was Brown v. Commissioner, supra. In Brown, the taxpayer wife and her husband executed a property settlement agreement whereby she transferred to her husband her community interest in an orange grove, together with improvements, tools, and machinery (collectively known as "the ranch"), in exchange for his promissory note on which he thereafter made periodic payments to her. The Commissioner determined that the transaction was a taxable sale or exchange on which the taxpayer wife realized gain. In holding for the Commissioner, we said: It is true that a mere partition of community property interests has been regarded as producing neither taxable gain nor loss. Frances R. Walz, 32 B.T.A. 718, 719 [(1935)]. On the other hand, it is equally true that interests in community property *345 may be severed by a sale from one spouse to the other, and when such occurs the transaction is one in which taxable gain or loss may be realized. See C. C. Rouse, 6 T.C. 908, 913-914 [(1946)], affirmed, 159 Fed. (2d) 706 (C.A. 5 [(1947)]): * * * We do not have here a division of community interests in the ranch. Indeed it does not appear that it was feasible to divide the ranch. The evidence suggests rather that the ranch property could be operated efficiently only as a unit, and the sole question as between husband and wife was as to which of them would get the ranch by purchasing the interest of the other and at what price. Nor was this a case in which the community property consisted of the ranch and a large amount of cash and in which it was agreed that the total property would be severed in such manner that the husband would keep the ranch and the wife would keep the cash. Here, the cash that the wife would receive was not community property at all. It was merely the purchase price for her interest in the ranch. The transaction was basically a sale rather than a division or partition. * * * [Brown v. Commissioner *346 , supra.]
In Brown v. Commissioner, supra, we held the transaction taxable to the taxpayer wife because she received noncommunity property (her husband's promissory note) in exchange for her interest in community property (the ranch). That is what happened in the case at hand; Mrs. Gaughan received $ 1.7 million from Mr. Gaughan, which was his separate property, in exchange for her community interest in the TSI stock. As a result, under pre-section 1041 law, the transaction was a taxable sale, Mrs. Gaughan realized and recognized gain, and Mr. Gaughan obtained an increased basis equal to the $ 1.7 million purchase price he paid Mrs. Gaughan. In Rouse v. Commissioner, 159 F.2d 706 (5th Cir. 1947), affg. 6 T.C. 908 (1946), the Court of Appeals for the Fifth Circuit reached the same result that we reach in the case at hand; i.e., where divorcing spouses agree that one spouse will receive cash (or post-divorce periodic payments) for his or her interest in community property, the transaction is treated as a taxable sale or exchange if the cash (or payments) is (are) the other spouse's separate property. See also *347 Johnson v. United States, 135 F.2d 125 (9th Cir. 1943); Carrieres v. Commissioner, 64 T.C. 959 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977); Edwards v. Commissioner, 22 T.C. 65 (1954). Such cases, and the case at hand, are to be distinguished from the case in which husband and wife divide community property on such terms that one spouse takes entire pieces of community property and the other spouse takes community cash of equal value. Brown v. Commissioner, a Memorandum Opinion of this Court dated Aug. 20, 1953. There, both spouses receive community property rather than the other spouse's separate property and the transaction is a tax-free division of community property. Walz v. Commissioner, 32 B.T.A. 718 (1935); Wren v. Commissioner, T.C. Memo. 1965-52; Brown v. Commissioner, supra.
In an attempt to prevent us from holding that the $ 2 million loan proceeds were Mr. Gaughan's separate property and that the TSI stock transaction was a taxable sale, Mrs. Gaughan and respondent *348 argue that the parol evidence rule, as applied under the so called "Danielson rule", Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), revg. 44 T.C. 549 (1965), precludes Mr. Gaughan from adducing extrinsic evidence; i.e., evidence that goes beyond the four corners of the property settlement agreement and the divorce decree, such as trial testimony and Mr. Gaughan's promissory note to the bank, for purposes of "attacking the equal division of community property set out in the Divorce Decree and the Property Agreement." [10] This is a specious argument. *349 First, it is sections 5.01 and 5.02 of the Texas Family Code, see supra note 7, and not petitioners' property settlement agreement or the divorce decree that determine whether the $ 2 million in loan proceeds was community property. See Taylor v. Hollingsworth, 176 S.W.2d 733 (Tex. 1943). Therefore, because we need not construe the property settlement agreement in order to determine the nature of the $ 2 million loan proceeds, the note and trial testimony are not inadmissible by reason of the Danielson rule to prove that the loan proceeds were Mr. Gaughan's separate property. Not all Courts of Appeals follow Commissioner v. Danielson, supra, and this Court does not follow it unless compelled to do so by Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Elrod v. Commissioner, 87 T.C. 1046, 1065-1066 (1986); Coleman v. Commissioner, 87 T.C 178, 202 (1986), affd. without published opinions 833 F.2d 303 (3d Cir. 1987). The *350 Danielson rule is followed by the Court of Appeals for the Fifth Circuit, the circuit to which Mr. Gaughan's case would be appealable. Spector v. Commissioner, 641 F.2d 376 (5th Cir. 1981), revg. 71 T.C. 1017 (1979). However, Mrs. Gaughan's case would be appealable to the Court of Appeals for the Tenth Circuit because she was a resident of Santa Fe, New Mexico, when she filed her petition. Sec. 7482(b)(1)(A); 28 U.S.C. sec. 41 (1988). That Court of Appeals has not adopted or rejected the Danielson rule. Nevertheless, it is likely that Mrs. Gaughan and respondent, who argue that Danielson applies in this case, would stipulate that Mrs. Gaughan's case could be appealed in the Fifth Circuit, rather than the Tenth Circuit. Sec. 7482(b)(2). Although inconsistent results could conceivably occur if both petitioners' cases are heard by different Courts of Appeals and both petitioners prevail on appeal, the risk of whipsaw to the Commissioner, one of the principal policy reasons for the Danielson rule, Spector v. Commissioner, supra at 385; *351 Commissioner v. Danielson, supra at 775, 778, is remote. This is because the Commissioner has issued both taxpayers statutory notices of deficiency based on inconsistent legal theories, and both taxpayers are before the Court in this consolidated proceeding. Moreover, the apparent choice of forum on appeal for Mrs. Gaughan, who seems to be the party most likely to initiate an appeal, is the Fifth Circuit, the same forum in which the Commissioner would appeal our decision in favor of Mr. Gaughan, barring stipulation to the contrary. In addition, an appeal to separate Courts of Appeals would not require different applications of the law of community property, inasmuch as Texas law controls whether the $ 2 million loan proceeds were community or separate property. In any event, regardless of which Court of Appeals may hear an appeal of Mrs. Gaughan's case, the Danielson rule does not apply to these consolidated cases because respondent has taken inconsistent positions and both parties to the transaction are before the Court. Freeport Transport, Inc. v. Commissioner, 63 T.C. 107, 115-116 (1974). Because Mrs. Gaughan's *352 basis in the TSI stock was only $ 3,000, she recognized $ 1,697,000 of capital gain on the sale, rather than zero. Inasmuch as the section 1202 capital gain deduction was a tax preference item for purposes of the alternative minimum tax, Mrs. Gaughan is liable for such tax as determined in the notice of deficiency. Sec. 57(a)(9). We therefore sustain respondent's deficiency determination with respect to Mrs. Gaughan's 1983 Federal income tax liability. Accordingly, Mr. Gaughan's basis in the TSI shares he acquired from Mrs. Gaughan included the $ 1.7 million he paid for her one-half interest therein. Sec. 1012. As a result, we reject respondent's determination that Mr. Gaughan's basis in the TSI shares did not include the $ 1.7 million. To reflect the foregoing, Decision will be entered for petitioner in docket No. 150-91. Decision will be entered for respondent as to the deficiency and for petitioner as to the addition to tax under sec. 6661(a) in docket No. 259-91. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court's Rules of Practice and Procedure.↩
2. In the property settlement agreement, incorporated in and made a part of the divorce decree, petitioners acknowledged: that this intended partition by which the properties listed on the Schedules to this Property Settlement Agreement are distributed and set aside to each of them, constitutes a partition and division of property by co-owners of the community properties of the parties, and that the community assets allocated to each of the parties, net of liabilities, are substantially equal in value considering the total properties allocated to * * * [Mrs. Gaughan] and the total properties allocated to * * * [Mr. Gaughan].
Petitioners agreed that Mr. Gaughan: solely shall be liable for and shall pay without contribution from * * * [Mrs. Gaughan] any and all deficiencies in income taxes (including penalties and interest), if any, relating to the community income from * * * [Mr. and Mrs. Gaughan] from date of marriage through the date of divorce, save and except any taxes generated by the division of assets provided herein.
Schedule A of the agreement states that, among other items of property, there was set aside to Mr. Gaughan: Any and all interest in Telecommunications Specialists, Inc., including but not limited to 61,238 shares of stock, subject to any and all indebtedness, liabilities, notes, debts, obligations, guarantees and contingent liabilities related to Telecommunications Specialists, Inc., directly or indirectly, including but not limited to any and all notes to Transamerican Leasing Company; Allied Bank of Texas $ 6,000,000 note and continuing guarantee agreement; any and all notes due to InterFirst bank of Houston, including but not limited to a note in the sum of $ 7,500,000 dated April 30, 1983; $ 3,000,000 line of credit to InterFirst Bank; unlimited guarantee, both corporate and individual, to Interfirst Bank relating to Telecommunications Specialists, Inc., and Telecommunications Specialists, Inc. Acceptance Corporation, aka TSI Acceptance Corporation; and any other debts for which Telecommunications Specialists, Inc. or * * * [Mr. Gaughan], individually, may be obligated. Said shares of stock shall be transferred upon entry of the decree approving this Agreement. Schedule B of the agreement states that, among other items of property, there was set aside to Mrs. Gaughan: The sum of One Million Seven Hundred Thousand ($ 1,700,000.00) Dollars, to be paid by cash or cashier's check to * * * [Mrs. Gaughan by Mr. Gaughan] upon execution of this Agreement and entry of Decree of Divorce approving same.↩
3. This sale price greatly exceeded the value of the shares agreed to by petitioners one year earlier at the time of their divorce. It appears, however, that the shares were subject to a buy-sell agreement that would have become operative upon the divorce with respect to Mrs. Gaughan's community interest in the shares, and that the formula price under the buy-sell agreement was substantially less than the amount received by her under the property settlement agreement. Both petitioners were represented by counsel throughout the negotiations and proceedings that led up to the property settlement agreement and divorce.↩
4. Mrs. Gaughan has conceded that her basis in her one-half interest in the TSI shares was $ 3,000.↩
5. For purposes of sec. 6501(e)(1), "gross income" means all items of gross income listed in sec. 61(a), but, in the case of a trade or business, it means "the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services". Sec. 6501(e)(1)(A)(i)↩. Mrs. Gaughan reported $ 183,720 in gross income, within the meaning of this definition, on her 1983 return.
6. Sec. 1041(a) provides as follows: SEC. 1041. TRANSFERS OF PROPERTY BETWEEN SPOUSES OR INCIDENT TO DIVORCE (a) GENERAL RULE. -- No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of) -- (1) a spouse, or (2) a former spouse, but only if the transfer is incident to the divorce.
Sec. 1041 was added to the Code by the Deficit Reduction Act of 1984 (DEFRA) sec. 421, Pub. L. 98-369, 98 Stat. 494, 793, and is effective with respect to property transfers between spouses and former spouses incident to divorce occurring after July 18, 1984, the date the statute was enacted. DEFRA sec. 421(d), 98 Stat. 795; Balding v. Commissioner, 98 T.C. 368, 370-371 (1992). Sec. 1041 also applies to such transfers occurring before the statute's effective date if taxpayers so elect. DEFRA sec. 421(d)(2); see also sec. 1.1041-1T(f), Income Tax Regs., 49 Fed. Reg. 34454↩ (Aug. 31, 1984).
7. Certain States, such as Texas, treat all property acquired by a married couple during marriage that is not separate property as "community property" in which both husband and wife have an undivided one-half interest. The presumption is that property acquired during marriage is community property. Tex. Fam. Code Ann. sec. 5.02 (Vernon 1993); see Black's Law Dictionary 280 (6th ed. 1990). Under Texas law, the separate property of a spouse is: (1) Property owned or claimed by the spouse before marriage, (2) property acquired by gift, devise or descent, and (3) personal injury damage recoveries, except recoveries for lost earning capacity. Tex. Fam Code Ann. sec. 5.01; Ray v. United States, 385 F. Supp. 372, 377-378 (S.D. Tex. 1974), affd. 538 F.2d 1228↩ (5th Cir. 1976); see Black's Law Dictionary 1365.
8. Although not expressly stated in the record, the fact that Mr. Gaughan sold the shares in 1984 must mean that he repaid the loan at the time of the sale or made other arrangements for repayment that were satisfactory to the lender and for which Mrs. Gaughan had no obligation.↩
9. Mrs. Gaughan tries to make much of the fact that in par. 5(j) of Mr. Gaughan's petition, he alleged that he was forced to borrow $ 1,700,000.00 and include this amount in the community↩ in order to effectuate a "partition" which was acceptable to his former spouse. When funds are brought from outside the community estate to "equalize" the division of property, no argument can be made that the division of the community assets was equal. [Emphasis added.]
Mrs. Gaughan argues that this allegation is a judicially binding admission by Mr. Gaughan that the loan proceeds were community property. However, we do not accept the allegation in par. 5(j) as a judicial admission of anything in particular because it is ambiguous and internally inconsistent. Moreover, respondent denied the allegation in her answer. See Rule 36(c). Therefore the facts alleged in par. 5(j) are not facts that are deemed admitted in Mr. Gaughan's case nor is par. 5(j) a judicial admission with respect to Mrs. Gaughan inasmuch as she is not party to the suit between Mr. Gaughan and the Commissioner even though both cases have been consolidated for trial, briefing, and opinion.
10. The Danielson rule is as follows: a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc. * * * [Commissioner v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967), revg. 44 T.C. 549↩ (1965); emphasis added.]