ESTATE of Frank D. STRANAHAN, Deceased, et al., Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 72–1333.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1972.

Decided Feb. 2, 1973.

James F. Kennedy, Jr., of Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for petitioners-appellants; Marshall, Melhorn, Bloch & Belt, Duane Stranahan, Jr., Gerald P. Moran, Toledo, Ohio, on brief.

Gary R. Allen, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Thomas L. Stapleton, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before CELEBREZZE, PECK and KENT, Circuit Judges.

PECK, Circuit Judge.

This appeal comes from the United States Tax Court,[1] which partially denied appellant estate's petition for a redetermination of a deficiency in the decedent's income tax for the taxable period January 1, 1965 through November 10, 1965, the date of decedent's death.

The facts before us are briefly recounted as follows: On March 11, 1964, the decedent, Frank D. Stranahan, entered into a closing agreement with the Commissioner of Internal Revenue Service (IRS) under which it was agreed that decedent owed the IRS $754,815.72 for interest due to deficiencies in federal income, estate and gift taxes regarding several trusts created in 1932. Decedent, a cash-basis taxpayer, paid the amount during his 1964 tax year. Because his personal income for the 1964 tax year would not normally have been high enough to fully absorb the large interest deduction, decedent accelerated his future income to avoid losing the tax benefit of the interest deduction. To accelerate the income, decedent executed an agreement dated December 22, 1964, under which he assigned to his son, Duane Stranahan, $122,820 in anticipated stock dividends from decedent's Champion Spark Plug Company common stock (12,500 shares). At the time both decedent and his son were employees and shareholders of Champion. As consideration for this assignment of future stock dividends, decedent's son paid the decedent $115,000 by check dated December 22, 1964. The decedent thereafter directed the transfer agent for Champion to issue all future dividend checks to his son, Duane, until the aggregate amount of $122,820 had been paid to him. Decedent reported this $115,000 payment as ordinary income for the 1964 tax year and thus was able to deduct the full interest payment from the sum of this payment and his other income. During decedent's taxable year in question, dividends in the total amount of $40,050 were paid to and received by decedent's son. No part of the $40,050 was reported as income in the return filed by decedent's estate for this period. Decedent's son reported this dividend income on his own return as ordinary income subject to the offset of his basis of $115,000, resulting in a net amount of $7,282 of taxable income.

Subsequently, the Commissioner sent appellant (decedent's estate) a notice of deficiency claiming that the $40,050 received by the decedent's son was actually income attributable to the decedent. After making an adjustment which is not relevant here, the Tax Court upheld the deficiency in the amount of $50,916.-78. The Tax Court concluded that decedent's assignment of future dividends in exchange for the present discounted cash value of those dividends "though conducted in the form of an assignment of a property right, was in reality a loan to [decedent] masquerading as a sale and so disguised lacked any business purpose; and, therefore, decedent realized taxable income in the year 1965 when the dividend was declared paid."

As pointed out by the Tax Court, several long-standing principles must be recognized. First, under Sec-

1. P–H Memo T.C., par. 71,250.

tion 451(a) of the Internal Revenue Code of 1954, a cash basis taxpayer ordinarily realizes income in the year of receipt rather than the year when earned. Second, a taxpayer who assigns future income for consideration in a bona fide commercial transaction will ordinarily realize ordinary income in the year of receipt. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L. Ed. 1168 (1941). Third, a taxpayer is free to arrange his financial affairs to minimize his tax liability[2]; thus, the presence of tax avoidance motives will not nullify an otherwise bona fide transaction.[3] We also note there are no claims that the transaction was a sham, the purchase price was inadequate or that decedent did not actually receive the full payment of $115,000 in tax year 1964. And it is agreed decedent had the right to enter into a binding contract to sell his right to future dividends. 12 Ohio Jur.2d, Corporations, Sec. 604.

The Commissioner's view regards the transaction as merely a temporary shift of funds, with an appropriate interest factor, within the family unit. He argues that no change in the beneficial ownership of the stock was effected and no real risks of ownership were assumed by the son. Therefore, the Commissioner concludes, taxable income was realized not on the formal assignment but rather on the actual payment of the dividends.

■■■■ It is conceded by taxpayer that the sole aim of the assignment was the acceleration of income so as to fully utilize the interest deduction.[4] Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), established the landmark principle that the substance of a transaction, and not the form, determines the taxable consequences of that transaction. See also Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1940). In the present transaction, however, it appears that both the form and the substance of the agreement assigned the right to receive future income. What was received by the decedent was the present value of that income the son could expect in the future. On the basis of the stock's past performance, the future income could have been (and was[5]) estimated with reasonable accuracy. Essentially, decedent's son paid consideration to receive future income. Of course, the fact of a family transaction does not vitiate the transaction but merely subjects it to special scrutiny. Helvering v. Clifford, 309 U. S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940).

■■■■ We recognize the oft-stated principle that a taxpayer cannot escape taxation by legally assigning or giving away a portion of the income derived from income producing property retain-

---

2. "Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." Helvering v. Gregory, 69 F.2d 809, 810 (2d Cir. 1934) (Hand, J. Learned), aff'd 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

3. "As to the astuteness of taxpayers in ordering their affairs so as to minimize taxes, we have said that 'the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it.' Superior Oil Co. v. Mississippi, 280 U.S. 390, 395–396, [50 S.Ct. 169, 74 L.Ed. 504]. This is so because 'nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions.'" Atlantic Coast Line v. Phillips, 332 U.S. 168, 172–173, 67 S.Ct. 1584, 1587, 91 L.Ed. 1977 (1947) (Frankfurter, J.).

4. No part of the cash received from the sale of the right to future dividends was used to make payment of interest or principal of the tax settlement.

5. It was determined that with the current dividend payment rate at that time of 50 cents per share per quarter, $115,000 represented the present value of the right to receive the assigned dividends of $4.60 per share discounted at the then prevailing interest rate of five percent.

ed by the taxpayer. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); Commissioner v. P. G. Lake, Inc., *supra*. Here, however, the acceleration of income was not designed to avoid or escape recognition of the dividends but rather to reduce taxation by fully utilizing a substantial interest deduction which was available.[6] As stated previously, tax avoidance motives alone will not serve to obviate the tax benefits of a transaction.[7] Further, the fact that this was a transaction for good and sufficient consideration, and not merely gratuitous, distinguishes the instant case from the line of authority beginning with Helvering v. Horst, *supra*.

The Tax Court in its opinion relied on three cases. In Fred W. Warner, 5 B. T.A. 963 (1926), which involved an assignment by taxpayer to his wife of all dividend income respecting his 12,500 shares of General Motors Corporation stock, it was held the dividends were income to the taxpayer and were not diverted to the wife through the purported assignment. However, this was a mere gratuitous assignment of income since apparently the only consideration for the assignment was ten dollars. Alfred LeBlanc, 7 B.T.A. 256 (1927), involved a shareholder-father assigning dividends to his son for as long as the son remained with the father's corporation. The Court held that in effect the father postdated his assignment to the dates when he was to receive dividends and hence the dividends were income to the father. However, here again it is apparent that at the time of the assignment there was no consideration. In Trousdale v. Commissioner, 219 F.2d 563 (9th Cir. 1955), a taxpayer-partner attempted to convert future ordinary in-

come into capital by selling his partnership interest. The Ninth Circuit determined that the sale of future partnership profits cannot be converted to capital gain but must be considered ordinary income. It is significant to note that the consideration for the assignment was recognized as ordinary income in the year the assignment was executed even though several outstanding accounts were apparently not collected in full until the following year.

Hence the fact that valuable consideration was an integral part of the transaction distinguishes this case from those where the simple expedient of drawing up legal papers and assigning income to others is used. The Tax Court uses the celebrated metaphor of Justice Holmes regarding the "fruit" and the "tree"[8], and concludes there has been no effective separation of the fruit from the tree. Judge Cardozo's comment that "[m]etaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it" (Berkey v. Third Avenue Railway Co., 244 N.Y. 84, 94, 155 N.E. 58, 61 (1926)) is appropriate here, as the genesis of the metaphor lies in a gratuitous transaction, while the instant situation concerns a transaction for a valuable consideration.

The Commissioner also argues that the possibility of not receiving the dividends was remote, and that since this was particularly known to the parties as shareholders and employees of the corporation, no risks inured to the son. The Commissioner attempts to bolster this argument by pointing out that consideration was computed merely as a discount based on a prevailing interest rate and that the dividends were in fact paid at a rate faster than anticipated.[9] However,

---

6. By accelerating income into the year 1964, when it would be offset by the interest deduction, decedent could reduce his potential tax liability for the future years in which the dividends would be paid.

7. See footnotes 2 and 3, *supra*.

8. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

9. The actual dividends for the years 1965 through 1967 were, respectively, $2.10, $2.20, and $2.20 per share.

it seems clear that risks, however remote, did in fact exist. The fact that the risks did not materialize is irrelevant. Assessment of the risks is a matter of negotiation between the parties and is usually reflected in the terms of the agreement. Since we are not in a position to evaluate those terms, and since we are not aware of any terms which dilute the son's dependence on the dividends alone to return his investment, we cannot say he does not bear the risks of ownership.

Accordingly, we conclude the transaction to be economically realistic, with substance, and therefore should be recognized for tax purposes even though the consequences may be unfavorable to the Commissioner. The facts establish decedent did in fact receive payment. Decedent deposited his son's check for $115,000 to his personal account on December 23, 1964, the day after the agreement was signed. The agreement is unquestionably a complete and valid assignment to decedent's son of all dividends up to $122,820. The son acquired an independent right against the corporation since the latter was notified of the private agreement. Decedent completely divested himself of any interest in the dividends and vested the interest on the day of execution of the agreement with his son.

The Commissioner cites J. A. Martin, 56 T.C. 1255 (1972), aff'd No. 72–1416 (5th Cir., August 18, 1972), to show how similar attempts to accelerate income have been rejected by the courts. There taxpayer assigned future rents in return for a stated cash advance. Taxpayer agreed to repay the principal advanced plus a 7% per annum interest. These facts distinguish this situation from the instant case as there the premises were required to remain open for two years' full rental operation, suggesting a guarantee toward repayment. No such commitment is apparent here.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.