HAZEL EILEEN BALDING, PETITIONER *v.*
COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 10108-90.          Filed March 31, 1992.

*Jack W. Golden,* for petitioner.
*William A. McCarthy,* for respondent.

OPINION

HALPERN, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax for the years 1986, 1987, and 1988, in the amounts of $3,605, $3,240, and $1,912, respectively. The sole issue we must decide is whether payments received by petitioner in settlement of her claim to a community property share of her ex-husband's military retirement pay are includable in gross income. This case has been submitted for decision without trial, pursuant to Rule 122.[1] Facts stipulated by the parties are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference.

*Background*

At the time of the filing of the petition in this case petitioner resided in Grover City, California.

Petitioner and Joe M. Balding (Balding) were married in 1962, less than 1 year after Balding entered the military. In December 1981, subsequent to Balding's retirement from the military, they were divorced. Among other things, the divorce court ordered a division of their community property and affirmed that Balding's military retirement pay was his sole and separate property. In 1984, because of changes in

---

[1]Unless otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 in effect for the years in issue.

California's community property law, petitioner asked the divorce court to reope<sup>·</sup> its judgment of divorce and award her a community property share of Balding's military retirement pay.[2] Before the divorce court could act, petitioner and Balding reached a settlement with regard to the retirement pay, which settlement was stipulated between them and entered as an order by the divorce court.[3] Petitioner relinquished any claim to Balding's military retirement pay (and agreed not to bring any further claims with regard to marital property) in consideration of Balding's promise to pay to her $15,000, $14,000, and $13,000 in 1986, 1987, and 1988, respectively (hereinafter the settlement payments); petitioner also received Balding's promise not to make any future claims with regard to marital property. Petitioner did not include the settlement payments in her original returns for the years in question. After petitioner received a private letter ruling from respondent concluding that the settlement payments were includable, Priv. Ltr. Rul. 88-13-023 (Dec. 29, 1987), petitioner submitted unsigned Forms 1040X for 1986, 1987, and 1988, including in gross income for each year the settlement payment received in that year.[4] We must determine whether any income is recognized to petitioner on account of receipt of such payments. We conclude that no income is recognized to her pursuant to the provisions of section 1041.

---

[2]At the time of the final dissolution, military retirement benefits were not divisible in a dissolution proceeding as community property. See *McCarty v. McCarty,* 453 U.S. 210 (1981). However, pursuant to the Uniform Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. sec. 1408(c)(1) (1982), Congress provided that the States may treat military retirement benefits as community property. The effective date of the statute was made retroactive to the day before the Supreme Court decided *McCarty.* On Sept. 14, 1983, the State of California enacted Cal. Civ. Code sec. 5124, which provided that community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before Feb. 1, 1983, may be modified to include a division of military retirement benefits payable on or after Feb. 1, 1983, in a manner consistent with Federal law and the law of California as it existed before June 26, 1981, and as it has existed since Feb. 1, 1983. Such sec. 5124 provided that modifications of community property settlements, judgments, or decrees could be granted whether or not the prior settlement, judgment, or decree assumed otherwise. Any action for such a modification had to have been commenced before Jan. 1, 1986.

[3]At the time, suits challenging the constitutionality of Cal. Civ. Code sec. 5124 were ongoing and not finally resolved until *In re Marriage of Barnes,* 43 Cal. 3d 1371, 743 P.2d 915 (1987), wherein the California Supreme Court upheld the constitutionality of that section.

[4]Petitioner's unsigned 1988 Form 1040X shows $12,500 received from Balding, and not $13,000, as agreed to in the settlement. Such discrepancy has not been explained. The notice of deficiency includes $12,500 in income for 1988.

*Discussion*

The settlement payments were received by petitioner on account of her divorce from Balding and in settlement of her claim to a community property interest in property that previously had been determined to be Balding's separate property. Respondent has not argued, nor would we agree, that the settlement payments constitute alimony or separate maintenance taxable to petitioner pursuant to sections 61(a)(8) and 71. Respondent has argued that petitioner's relinquishment of her community property interest in the retirement benefits in question constituted an anticipatory assignment of income such that the consideration she received therefor (i.e., the settlement payments) is immediately taxable to her. Outside of the marital context, we would have little trouble agreeing with respondent. See *Commissioner v. P.G. Lake, Inc.,* 356 U.S. 260 (1958); *Estate of Stranahan v. Commissioner,* 472 F.2d 867 (6th Cir. 1973), revg. and remanding T.C. Memo. 1971-250. Transfers of property, or releases of marital rights, incident to divorce, however, are subject to a special set of rules found in section 1041.

Section 1041 was enacted by section 421 of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 793-795. In pertinent part it provides:

SEC. 1041. TRANSFERS OF PROPERTY BETWEEN SPOUSES OR INCIDENT TO DIVORCE.

    (a) GENERAL RULE.—No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)—

        (1) a spouse, or

        (2) a former spouse, but only if the transfer is incident to the divorce.

    (b) TRANSFER TREATED AS GIFT; TRANSFEREE HAS TRANSFEROR'S BASIS.—In the case of any transfer of property described in subsection (a)—

        (1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and

        (2) the basis of the transferee in the property shall be the adjusted basis of the transferor.

    (c) INCIDENT TO DIVORCE.—For purposes of subsection (a)(2), a transfer of property is incident to the divorce if such transfer—

        (1) occurs within 1 year after the date on which the marriage ceases, or

        (2) is related to the cessation of the marriage.

Section 1041 is effective generally for transfers after July 18, 1984, in taxable years ending after such date. See DEFRA sec. 421(a), 98 Stat. 793.[5]

Prior to the enactment of section 1041, the resolution of property rights incident to a divorce gave rise to differing tax results, depending on how each spouse's entitlements and obligations were viewed for State law purposes. The Supreme Court had ruled that a transfer of separately owned, appreciated property to a spouse (or former spouse) in exchange for the release of marital claims resulted in the recognition of gain to the transferor. *United States v. Davis,* 370 U.S. 65 (1962).[6] However, in the case of an approximately equal division of community property on divorce, no gain was recognized on the theory that no sale or exchange had occurred but only a nontaxable partition. *Carrieres v. Commissioner,* 64 T.C. 959, 964 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977). See also *Siewert v. Commissioner,* 72 T.C. 326, 332-333 (1979). Respondent applied a like result to the partition of jointly held property. See Rev. Rul. 74-347, 1974-2 C.B. 26. The tax treatment of divisions of property between spouses involving other various types of ownership under the different State laws was often unclear and resulted in much litigation. See H. Rept. 98-432 (Part 2), at 1491 (1984). Several States had amended their property law in an attempt to avoid the result in the *Davis* case. *Id.*

Congress was dissatisfied with the aforesaid state of the law and desired to change the tax laws to make them as unintrusive as possible with respect to relations between spouses. *Id.* at 1492. Section 1041 was the result. In part, the Ways and Means Committee explained the new provision as follows:

The bill provides that the transfer of property to a spouse incident to a divorce will be treated, for income tax purposes, in the same manner as a

---

[5]A transition rule applies to transfers pursuant to instruments predating the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, such that sec. 1041 is inapplicable unless both former spouses elect to have the provision apply to transfers under the instrument. DEFRA sec. 421(d)(3), 98 Stat 795. See also DEFRA sec. 421(d)(2), 98 Stat. 795. No such agreement is in the record. However, since neither party has raised any objection to the application of sec. 1041 (and, indeed, it is apparent that both believe it to apply), we will assume that it does. The parties may have treated the settlement stipulation agreed to by petitioner and Balding, which instrument does not predate DEFRA, as the relevant instrument for purposes of sec. 1041.

[6]No gain was recognized to the spouse receiving the property, and she took a tax basis in the asset equal to its fair market value. *United States v. Davis,* 370 U.S. 65, 73 (1962).

gift. Gain (including recapture income) or loss will not be recognized to the transferor, and the transferee will receive the property at the transferor's basis (whether the property has appreciated or depreciated in value). A transfer will be treated as incident to a divorce if the transfer occurs within one year after the parties cease to be married or is related to the divorce. This nonrecognition rule applies whether the transfer is for the relinquishment of marital rights, for cash or other property, for the assumption of liabilities in excess of basis, or for other consideration and is intended to apply to any indebtedness which is discharged. Thus, uniform Federal income tax consequences will apply to these transfers notwithstanding that the property may be subject to differing state property laws. [*Id.;* fn. ref. omitted.]

The language of section 1041 specifies broad rules of exclusion for both the transferor spouse and the transferee spouse. If the language of the statute leaves any doubt, the relevant legislative history (quoted above) makes clear that, notwithstanding the nature of the consideration received (whether, for instance, the relinquishment of marital rights, cash, property, or "other consideration"), no gain or loss is to be recognized to the transferor spouse on account of any unrealized appreciation or depreciation in the property transferred. Likewise, the transferee spouse is to be viewed as having received the transferred property as if by nontaxable gift. Any doubt that the receipt is nontaxable is answered by the regulations. Sec. 1.1041-1T(d), Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984) ("Q-11 How is the transferee of property under section 1041 treated for income tax purposes? A-11 The transferee of property under section 1041 recognizes no gain or loss upon receipt of the transferred property."). It is also clear that, even where the transfer is indisputably not a gift, gift treatment is still appropriate. See sec. 1.1041-1T(d), Temporary Income Tax Regs., *supra* ("A-11 * * * Even if the transfer is a bona fide *sale,* the transferee does not acquire a basis in the transferred property equal to the transferee's cost (the fair market value).)". (Emphasis added); see Staff of the Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 711 (J. Comm. Print 1984) (any transfer of property, "including money", is treated as made by (and acquired by) gift, so that recapture rules do not apply).

Here, petitioner released her claim to a community property share of her ex-husband's military retirement benefits in

exchange for the settlement payments. Respondent has not argued, nor could we accept, that such receipt was not incident to the divorce. The state of the law in California with regard to community property was unsettled at the time petitioner and Balding entered into the settlement agreement.[7] Nevertheless, whether we view petitioner's release as constituting (or equivalent to) a transfer of property, or simply a release of marital rights, the transaction whereby she received the settlement payments requires that we analyze her receipt in light of section 1041. The settlement payments having been received from her ex-husband, incident to her divorce (and in consideration of her release of any claim to his military retirement benefits), we must conclude that they constitute nontaxable gifts, pursuant to sections 1041 and 102. Respondent's determination of a deficiency, based on petitioner's failure to include such payments in gross income, cannot be sustained.[8] To take account of a stipulation regarding the deductibility of attorney's fees,

*Decision will be entered under Rule 155.*

---

[7] See *supra* notes 3 and 4.

[8] We do not here deal with the tax consequences to petitioner of retirement payments made by the Government on account of Balding's retirement. Cf. *Johnson v. United States,* 135 F.2d 125 (9th Cir. 1943). Accordingly, we have no occasion to consider whether the assignment of income doctrine would require petitioner's share of those retirement payments to be taken into petitioner's income as paid by the Government to Balding, notwithstanding petitioner's lack of entitlement to such payments. Respondent's notice of deficiency was narrowly drawn, alleging only that the settlement payments erroneously had been excluded from gross income. Respondent pleaded no new grounds in her answer, nor is there any evidence of any retirement payments during the years in question from which we could conform an amended pleading. See Rule 41(b). For an argument that petitioner is not required, under the Assignment of Income Doctrine, to take into income any portion of the retirement benefits, see Asimow, "The Assault on Tax-Free Divorce: Carryover Basis and Assignment of Income", 44 Tax L. Rev. 65, 84-112 (1988).