109 T.C. No. 14


UNITED STATES TAX COURT



JOHN L. SEYMOUR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2575-96.                    Filed November 5, 1997.



    P deducted the amount of interest paid to his
former spouse on an indebtedness which he incurred
incident to their divorce.  P claimed that the
indebtedness was properly allocable to investment,
passive activity, and qualified residence indebtedness
based on certain assets acquired pursuant to a decree
of divorce.  R disallowed such deduction on the ground
that sec. 1041, I.R.C., requires P's interest expense
to be characterized as personal interest under sec.
163(h)(1), I.R.C.

    <u>Held</u>:  Sec. 1041, I.R.C., has no relevance to the
proper characterization of interest on indebtedness
incurred incident to divorce.



<u>Thomas J. Thomas</u>, for petitioner.

<u>Leonard T. Provenzale</u>, for respondent.

RUWE, Judge:  Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows:

| Year | Deficiency | Additions to Tax | |
|------|-----------|----------------|-----------|
| | | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1992 | $116,819 | $926 | $2,910 |
| 1993 | 100,290 | -- | 1,749 |

After concessions, the issues for decision are: (1) Whether interest petitioner paid to his former spouse pursuant to a decree of divorce is nondeductible personal interest under section 163(h)(1);[1] and (2) whether petitioner is liable for the additions to tax under section 6654(a) for the taxable years 1992 and 1993.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and stipulation of settled issues are incorporated herein by this reference.  Petitioner resided in Palm Beach Gardens, Florida, at the time he filed his petition.

By Final Judgment of Dissolution of Marriage dated July 20, 1987 (the divorce decree), the Florida Circuit Court of the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules on Practice and Procedure.

Fifteenth Judicial Circuit, in and for Palm Beach County, dissolved the marriage between petitioner and Katherine S. Seymour.  In connection with their divorce, petitioner and Mrs. Seymour entered into a Separation and Property Settlement Agreement on July 17, 1987 (the property settlement agreement), which was subsequently incorporated into the divorce decree.

The property settlement agreement required that Mrs. Seymour convey to petitioner the following assets:

>        A.    The wife's Class A and Class B stock in Pepsi-Cola Bottling Company of Selma, Inc.;
>
>        B.    The wife's interest in the Pepsi-Cola land and building located in Selma, Alabama;
>
>        C.    The wife's interest in the marital homeplace located at 14732 Palmwood Road, Palm Beach Gardens, Florida.

Under the terms of the property settlement agreement, petitioner was required to pay to Mrs. Seymour the sum of $925,000,[2] payable as follows:

---

[2] The property settlement agreement also required petitioner to convey 30 percent of his 25-percent beneficial interest in the Seymour Trust.  Petitioner's 25-percent beneficial interest in the Seymour Trust had a current value of not less than $563,302. The property settlement agreement also required petitioner to assume Mrs. Seymour's debts which, according to petitioner's calculations, totaled $121,899.  Finally, the property settlement agreement required that petitioner pay $75,000 in attorney's fees and accounting service fees incurred by Mrs. Seymour incident to their divorce.

A.  $300,000 within thirty (30) days of the date of the execution of this agreement in current funds;

B.  The balance of $625,000 over a period of ten (10) years bearing interest at the rate of 10%.  The first three (3) years shall be payable interest only in equal semi-annual payments payable June 30 and December 31 each year.  The first payment shall be due December 31, 1987.  The remaining seven (7) years of the term of the note will be paid by the husband in equal semi-annual payments payable June and December each year of principal and interest. * * *

On January 1, 1988, petitioner executed a promissory note naming Mrs. Seymour as the holder and containing payment provisions similar to those reflected in the property settlement agreement.[3]  To secure the promissory note, petitioner conveyed to Mrs. Seymour a mortgage deed on the residence located in Palm Beach Gardens, Florida.  The mortgage deed conveyed to Mrs. Seymour was subordinate to a preexisting mortgage on the property.

During the years in issue, petitioner made the following payments (consisting of principal and interest) to Mrs. Seymour:

| Date | Principal | Interest | Total Payment |
|------|-----------|----------|---------------|
| 06/30/92 | $44,642.86 | $26,785.71 | $71,428.57 |
| 12/31/92 | 44,642.86 | 24,553.57 | 69,196.43 |
| Total | $89,285.72 | $51,339.28 | $140,625.00 |
| 06/30/93 | $44,642.86 | $22,321.43 | $66,964.29 |
| 12/31/93 | 44,642.86 | 20,089.29 | 64,732.15 |
| Total | $89,285.72 | $42,410.72 | $131,696.44 |

[3]The first payment on the promissory note was not due until June 30, 1988.

Petitioner failed to file timely Federal income tax returns for the taxable years 1992 and 1993. On November 13, 1995, respondent issued separate notices of deficiency to petitioner for the 1992 and 1993 taxable years. On February 9, 1996, petitioner submitted Federal income tax returns (Forms 1040) for the taxable years 1992 and 1993. On Schedules A of the Forms 1040, petitioner deducted $51,339.28 and $42,410.72 as investment interest for 1992 and 1993, respectively.

## OPINION

After concessions, the principal issue in this case involves the application of sections 163 and 1041 to interest that petitioner paid in 1992 and 1993 on indebtedness to his former spouse. Section 163(a) provides the general rule that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. However, as an exception to this general rule, section 163(h)(1) provides that in the case of a taxpayer other than a corporation, no deduction shall be allowed for personal interest which is paid or accrued during the taxable year. Pursuant to section 163(h)(2), personal interest does not include interest which is investment interest, interest which is taken into account under section 469 in

computing income or loss from a passive activity of the taxpayer (passive activity interest), or qualified residence interest.[4]

The term "investment interest" is defined to mean interest "which is paid or accrued on indebtedness properly allocable to property held for investment."  Sec. 163(d)(3)(A).  However, investment interest does not include any qualified residence interest or any interest taken into account under section 469 in computing income or loss from a passive activity of the taxpayer. Sec. 163(d)(3)(B).  In general, the deduction for investment interest is limited to the noncorporate taxpayer's net investment income for the taxable year.  Sec. 163(d)(1).

---

[4]Sec. 163(h)(2) provides:

For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than--

   (A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

   (B) any investment interest (within the meaning of subsection (d)),

   (C) any interest which is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer,

   (D) any qualified residence interest (within the meaning of paragraph (3)), and

   (E) any interest payable under section 6601 on any unpaid portion of the tax imposed by section 2001 for the period during which an extension of time for payment of such tax is in effect under section 6163 or 6166 or under section 6166A (as in effect before its repeal by the Economic Recovery Tax Act of 1981).

Interest allocated to a passive activity within the meaning of section 469 will be taken into account in determining the income or loss from such activity and, therefore, is not subject to the limitations of section 163(h).  Sec. 163(h)(2)(C). However, the interest expense will be subject to possible disallowance under the passive activity loss limitation of section 469.

For the purposes of applying the passive loss limitation of section 469 and the nonbusiness interest limitations of section 163(d) and (h), section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987), prescribes rules for the proper allocation of an interest expense.  In general, an interest expense is allocated in the same manner as the related debt is allocated; i.e., tracing the proceeds of the debt.  Sec. 1.163-8T(a)(3), Temporary Income Tax Regs, supra.  Section 1.163-8T(c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987), provides:

> Debt is allocated to expenditures in accordance with the use of the debt proceeds and, except as provided in paragraph (m) of this section, interest expense accruing on a debt during any period is allocated to expenditures in the same manner as the debt is allocated from time to time during such period.  Except as provided in paragraph (m) of this section, debt proceeds and related interest expense are allocated solely by reference to the use of such proceeds, and the allocation is not affected by the use of an interest in any property to secure the repayment of such debt or interest.  * * *

If the taxpayer incurs a debt in consideration for the sale or use of property, or takes property subject to a debt, and no debt proceeds are disbursed to the taxpayer, the debt is treated as if the taxpayer used an amount of the debt proceeds equal to the balance of the outstanding debt to make an expenditure for such property. Sec. 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 25001 (July 2, 1987).

Petitioner contends that the interest he paid to Mrs. Seymour is properly allocable to the assets he received from her incident to their divorce. Respondent contends that because the assets were transferred incident to a divorce, the treatment of the transaction under section 1041 prevents the allocation of petitioner's indebtedness to such assets, and the interest should be allocated to his personal obligation and, thus, characterized as nondeductible personal interest under section 163(h)(1).

Section 1041(a) provides that no gain or loss shall be recognized on a transfer of property from an individual to a spouse, or former spouse, if the transfer is incident to divorce. See Balding v. Commissioner, 98 T.C. 368, 370 (1992); Gibbs v. Commissioner, T.C. Memo. 1997-196. In the case of such a transfer, section 1041(b) provides that the property shall be treated as acquired by the transferee by gift and the basis of the property shall be the adjusted basis of the transferor. Respondent appears to argue that, since section 1041(b) provides that transfers incident to a divorce are to be treated as gifts,

any debt incurred with respect to such transfers cannot be allocated to the property acquired. We do not agree.

In Gibbs v. Commissioner, supra, the taxpayer failed to include as income the amount of interest she received from her former spouse pursuant to a decree of divorce. Although the taxpayer conceded that a portion of each payment she received represented interest, she argued that the payments received from her former spouse were in exchange for her interest in certain property transferred incident to divorce and, thus, excludable from her income under section 1041. In Gibbs v. Commissioner, supra, we stated that the interest portion of the payments the taxpayer received pursuant to the divorce decree, and any gain she might have realized upon the transfer of the property to her former spouse, "are two distinct items that give rise to separate Federal income tax consequences." Consequently, we held that section 1041 has no application to the interest portion of the payments received by the taxpayer and that such interest must be included in the taxpayer's income in the year received. Id.

In Notice 88-74, 1988-2 C.B. 385, the Internal Revenue Service (IRS) announced that for debt incurred to acquire an interest in a residence incident to divorce or legal separation, regulations will provide that, in general, such debt will be eligible to be treated as debt incurred in acquiring a residence

for purposes of section 163, without regard to the treatment of the transaction under section 1041.[5]

Although regulations concerning this issue have not been adopted,[6] further indication of the IRS's position may be found in Private Letter Rulings.[7]  In Priv. Ltr. Rul. 89-28-010 (Apr. 6, 1989), the taxpayer incurred a debt, the proceeds of which were paid to the taxpayer's former spouse pursuant to a marital settlement agreement.  In return, the taxpayer received the principal residence which, in turn, was used as security for the debt.  Citing Notice 88-74, supra, the IRS concluded that the interest on the debt will be qualified residence interest for purposes of section 163(h) and that the taxpayer may deduct such

---

[5]Notice 88-74, 1988-2 C.B. 385, 386 further states:  "This announcement serves as an 'administrative pronouncement' as that term is described in section 1.6661-3(b)(2) of the regulations and may be relied upon to the same extent as a revenue ruling or revenue procedure."

[6]See sec. 1.163-10T(k)(1)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 48414 (Dec. 22, 1987).  Sec. 1.163-10T, Temporary Income Tax Regs., 52 Fed. Reg. 48410 (Dec. 22, 1987), addresses the issue of what portion of an interest expense on an indebtedness secured by a qualified residence constitutes qualified residence interest.  However, this regulation does not reflect the amendments of the 1987 Revenue Act, nor does it address circumstances involving a transfer of a qualified residence between spouses incident to a divorce.

[7]Although private letter rulings are not precedent, sec. 6110(j)(3), they "do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws."  Hanover Bank v. Commissioner, 369 U.S. 672, 686 (1962); see Rowan Cos. v. United States, 452 U.S. 247, 259 (1981); Estate of Cristofani v. Commissioner, 97 T.C. 74, 84 n.5 (1991); Estate of Jalkut v. Commissioner, 96 T.C. 675 (1991).

amount subject to the limitations of section 163(h)(3) and the provisions of section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987), to the extent applicable. Priv. Ltr. Rul. 89-28-010 (Apr. 6, 1989); see also Priv. Ltr. Rul. 90-31-022 (May 7, 1990) (concluding that section 1041 does not apply to characterize interest expense on loan proceeds allocable to investment expenditures as personal interest for purposes of section 163(h)).

Finally, the historical language of section 163(h) reveals that section 1041, and its treatment of gain or loss on the transfer of property incident to divorce, is disregarded in allocating an interest expense. Prior to the amendments made by the Omnibus Budget Reconciliation Act of 1987 (OBRA-87), Pub. L. 100-203, 101 Stat. 1330, 1330-384, that apply to the present case, section 163(h)(3)(B) limited qualified residence interest, in general, to an amount incurred on a debt that did not exceed the taxpayer's basis in the residence. See Tax Reform Act of 1986, Pub. L. 99-514, sec. 511(b), 100 Stat. 2085, 2246.

The OBRA-87 amended the definition of qualified residence interest that is treated as deductible. The provisions of the OBRA-87 apply to taxable years beginning after December 31, 1987 and thus apply here. However, for any taxable year beginning in 1987, section 1005(c)(14) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3392, provided that in certain circumstances involving a transfer

of a qualified residence between spouses incident to a divorce or legal separation, the basis limitation on debt contained in section 511(b) of the Tax Reform Act of 1986 may be increased by the amount of secured indebtedness incurred by a spouse in connection with the acquisition of the other spouse's interest in the residence.[8]  Although enacted subsequent to the OBRA-87, the

---

[8]Sec. 1005(c)(14) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3392, provides:

     (A) For purposes of applying section 163(h) of the 1986 Code to any taxable year beginning during 1987, if, incident to a divorce or legal separation--

        (i) an individual acquires the interest of a spouse or former spouse in a qualified residence in a transfer to which section 1041 of the 1986 Code applies, and

        (ii) such individual incurs indebtedness which is secured by such qualified residence, the amount determined under paragraph (3)(B)(ii)(I) of section 163(h) of the 1986 Code (as in effect before the amendments made by the Revenue Act of 1987) with respect to such qualified residence shall be increased by the amount determined under subparagraph (B).

     (B) The amount determined under this subparagraph shall be equal to the excess (if any) of--

        (i) the lesser of the amount of the indebtedness described in subparagraph (A)(ii), or the fair market value of the spouse's or former spouse's interest in the qualified residence as of the time of the transfer, over

        (ii) the basis of the spouse or former spouse in such interest in such residence (adjusted only by the cost of any

(continued...)

provisions of this subsection of TAMRA were treated as having been enacted immediately before the enactment of the OBRA-87. TAMRA sec. 1005(c)(13), 102 Stat. 3392. Therefore, this amendment had only limited application. However, it is apparent that Congress did not view section 1041 as requiring the characterization of interest on indebtedness incurred incident to divorce as personal interest.

Based on the foregoing, we hold that section 1041 does not require petitioner's indebtedness to his former wife to be characterized as personal interest for purposes of section 163(h)(1). Nevertheless, our resolution of this issue does not determine whether petitioner is entitled to deduct the interest payments on such indebtedness. Unless the interest is properly characterized as investment interest, passive activity interest, or qualified residence interest, petitioner's interest expense may still be personal under section 163(h)(1) and thus not deductible. Sec. 1.163-9T, Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987).

Petitioner contends that the indebtedness to Mrs. Seymour was secured by a mortgage on his residence and that a portion of the interest arising from that indebtedness was qualified residence interest and properly deductible.[9] Section 1.163-

---

[8](...continued)
   improvements to such residence).

[9]Respondent does not contest that the mortgage deed securing
                                                    (continued...)

8T(m)(3), Temporary Income Tax Regs., 52 Fed. Reg. 25005 (July 2, 1987), provides:

>     Qualified residence interest (within the meaning of
>     section 163(h)(3)) is allowable as a deduction without
>     regard to the manner in which such interest expense is
>     allocated under the rules of this section.  In
>     addition, qualified residence interest is not taken
>     into account in determining the income or loss from any
>     activity for purposes of section 469 or in determining
>     the amount of investment interest for purposes of
>     section 163(d).  * * *

Because qualified residence interest is not taken into account in determining passive interest or investment interest, we must first determine what amount, if any, of petitioner's interest expense is properly characterized as qualified residence interest under section 163(h)(3).

Section 163(h)(3)(A) defines qualified residence interest as any interest which is paid or accrued during the taxable year on acquisition indebtedness or home equity indebtedness with respect to any qualified residence of the taxpayer.  The term acquisition indebtedness includes any indebtedness which is secured by a qualified residence and which is incurred in acquiring, constructing, or substantially improving such residence.  Sec. 163(h)(3)(B).  The total amount treated as acquisition

---

[9](...continued)
the indebtedness satisfies the definition of "secured debt" under sec. 1.163-10T(o), Temporary Income Tax Regs., 52 Fed. Reg. 48417 (Dec. 22, 1987), or that petitioner's residence meets the definition of "qualified residence" under sec. 1.163-10T(p), Temporary Income Tax Regs., 52 Fed. Reg. 48418 (Dec. 22, 1987).

indebtedness may not exceed $1 million or $500,000 for married

taxpayers filing separately.  Sec. 163(h)(3)(B)(ii).

In addition to stating that section 1041 will be disregarded

in determining the eligibility of acquisition indebtedness,

Notice 88-74, 1988-2 C.B. 385, also provides guidance concerning

what is meant by acquisition indebtedness.  Notice 88-74, 1988-2

C.B. at 385-386, states:

> Regulations will provide for purposes of section 163 that a debt may be treated as incurred in acquiring, constructing, or substantially improving a residence of the taxpayer to the extent that the proceeds of the debt are used, within the meaning of section 1.163-8T, to acquire, construct or substantially improve the residence.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> Notwithstanding the tracing rules of section 1.163-8T, in the case of the acquisition of a residence, debt may be treated as incurred to acquire the residence to the extent of expenditures to acquire the residence made within 90 days before or after the date that the debt is incurred.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> The total amount of debt which may be treated as debt incurred in acquiring, constructing or substantially improving a residence may not exceed the cost of the residence (including the cost of any improvements).

Therefore, debt secured by the residence will be treated as

acquisition indebtedness either under the normal tracing rules of

section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999

(July 2, 1987), or, as an alternative, any debt may be treated as

incurred to acquire the residence to the extent of expenditures

to acquire the residence made within 90 days before or after the date the debt was incurred.

In addition, Notice 88-74, supra, provides that a single debt may qualify as partially acquisition and partially home equity indebtedness. In general, home equity indebtedness is any indebtedness, other than acquisition indebtedness, secured by a qualified residence to the extent that the total debt does not exceed the fair market value of the residence less the acquisition indebtedness associated with such residence. Sec. 163(h)(3)(C). The limit on home equity indebtedness is $100,000 or $50,000 for married taxpayers filing separately. Id.

With these rules in mind, we turn now to the proper allocation of petitioner's interest expense. Petitioner contends that the interest should be allocated among the assets received from his former spouse in proportion to the fair market value of each asset at the time of transfer.[10] Petitioner suggests in his

---

[10]Petitioner appears to rely upon Notice 89-35, 1989-1 C.B. 675, which provides special interest allocation rules for investors who own shares in partnerships or S corporations. Notice 89-35, 1989-1 C.B. at 676, provides:

Reasonable methods of allocating debt among the assets of a passthrough entity ordinarily include a pro-rata allocation based on the fair market value, book value, or adjusted basis of the assets, reduced by any debt of the passthrough entity or the owner allocated to such assets.

\* \* \* \* \* \* \*

For purposes of this notice, the determination of
(continued...)

brief that the interest be characterized and allocated in the following pro rata manner:

| Asset | Character of Interest | Percent of FMV of each asset in 1987 divided by FMV of total assets | 1992 Interest | 1993 Interest |
|---|---|---|---|---|
| Class A stock[1] | Investment | 41.0% | $21,049.10 | $17,388.40 |
| Class B stock[2] | Investment | 15.0 | 7,700.89 | 6,361.61 |
| Palm Beach house[3] | Qualified residence | 13.2 | 6,776.78 | 5,598.22 |
| Rental real estate in Selma, Alabama[4] | Passive activity | 15.4 | 7,906.25 | 6,531.25 |
| Rental real estate in Denver, Colorado[5] | Passive activity | 15.4 | 7,906.25 | 6,531.25 |
| Total | | 100.0% | $51,339.27 | $42,410.73 |

[1]The Class A stock consisted of 160 shares in Pepsi-Cola Bottling Co. of Selma, Inc., which petitioner valued at $466,720.

[2]The Class B stock consisted of 73 shares in Pepsi-Cola Bottling Co. of Selma, Inc., which petitioner valued at $170,382.

[3]The residence located in Palm Beach Gardens, Florida, was valued at $300,000. This residence was encumbered by a mortgage securing a preexisting debt with a remaining balance of $47,878.

[4]The land and building located in Selma, Alabama, was valued at $350,000 and leased to the Pepsi-Cola Bottling Co. of Selma, Inc. According to the property settlement agreement, this land was encumbered by a mortgage securing a debt in the amount of $87,356.

[5]Petitioner testified that he purchased a rental house in Denver, Colorado, in 1984 for $354,000. This property was titled in petitioner's name prior to his divorce.

We have several concerns regarding petitioner's proposed allocation. First, petitioner does not allocate the interest among all assets he received from Mrs. Seymour in accordance

[10](...continued)
whether a particular method of allocating debt proceeds used to purchase an interest in or to make a capital contribution to a passthrough entity is reasonable depends on the facts and circumstances including, without limitation, whether the taxpayer consistently applies the method from year to year.

with section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). According to the property settlement agreement and financial statements provided by petitioner, he received assets including certain household furnishings, Mrs. Seymour's interest in two automobiles, and her interest in a tax refund for 1985. Petitioner's proposed allocation does not allocate indebtedness to any of these assets. Second, we find petitioner's allocation of part of the indebtedness to the Denver, Colorado, rental real estate inappropriate. The financial statements petitioner submitted, as well as petitioner's own testimony, indicate that Mrs. Seymour had no interest in this asset prior to their divorce. In addition, the property settlement agreement does not provide for, or even refer to, any property located in Denver, Colorado. Consequently, no amount of indebtedness or interest should be allocated to this asset under section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 25001 (July 2, 1987). Finally, petitioner's suggested allocation disregards the provisions of section 163(h)(3) and the guidance provided by Notice 88-74, 1988-2 C.B. 385, concerning the characterization of qualified residence interest. We determine that the proper allocation of petitioner's indebtedness to his residence must be made in accordance with this guidance. The remaining indebtedness must be allocated among all other assets petitioner received incident to the property settlement

agreement pursuant to section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). We believe that the proper allocation of petitioner's interest expense can be mutually resolved and expect the parties to enter a stipulated computation to that effect.

Respondent also determined that petitioner is liable for additions to tax under section 6654(a) for failure to pay estimated income tax. Section 6654(a) provides for an addition to tax "in the case of any underpayment of estimated tax by an individual". Subject to certain exceptions provided by statute, this addition to tax is otherwise automatic if the amounts of the withholdings and estimated tax payments do not equal statutorily designated amounts. Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

Petitioner failed to produce any evidence that would tend to show that any of the statutory exceptions should apply or that respondent's determination of petitioner's liability for the addition to tax under section 6654(a) is in error. Consequently, because petitioner failed to make any estimated tax payments during the years in issue, we hold that he is liable for the additions to tax under section 6654(a) for 1992 and 1993.

An appropriate order will be issued.